Leo Brown, J.
Fundamental questions concerning the liability of a newspaper which publishes an advertisement that allegedly injures the advertiser’s competitors are presented on these four separate motions by the newspaper defendants for summary judgment.
This is an action by J. S. Garlick Parkside Memorial Chapels, Inc. (hereinafter Garlick Parkside) which is in the business of conducting funerals, and by Larry Goldstein, oae of its shareholders, for a permanent injunction and compensatory and punitive damages against a competing funeral home, Joseph N. Garlick Funeral Homes, Inc. (hereinafter Garlick), four of Garlick’s funeral directors, other persons connected with Gar-lick, and against four other competing funeral chapels, and the four newspaper defendants (The New York Times, Inc., The New York Post, The Bay-Jewish Journal, The Forward Association, Inc.).
Thirteen causes of action are asserted by plaintiffs against the non-newspaper defendants, in which plaintiffs all' ge various acts which they claim constitute a conspiracy on tin part of defendants to destroy plaintiffs’ business. Only two of the causes of action are asserted against the newspaper defendants. In the seventh cause of action, which is asserted against Áípthe defendants, plaintiffs allege that Garlick Parkside has, during its 40 years in business, developed an excellent reputation and, in part, this has been the result of substantial advertising; that commencing on September 27, 1970, Garlick and others caused the newspaper defendants to publish certain advertisements for the purpose and with the effect of passing off Garlick as Garlick Parkside and of confusing and misleading the public as to the true identity of Garlick Parkside and of misappropriating to Garlick the good will and reputation and business opportunities of Garlick Parkside. Plaintiffs conclude that these activities have caused them irreparable injury and that the remedy at law is insufficient.
*540 For their ninth canse of action, plaintiffs allege that the Garlick defendants entered into a conspiracy and schemed to destroy Garlick Parkside and that “ each of the actions taken were taken with the knowledge, consent and conspiratorial participation hy all defendants except the newspaper defendants in a plan, conspiracy and scheme to destroy Garlick Parkside.” Plaintiffs conclude that each of the acts referred to constitute acts of unfair competition and that the defendants, by publishing the advertisements, “ have committed and assisted in the commission of acts of unfair competition against Garlick Parkside.”
The essence of the causes of action asserted against the newspaper defendants is that these defendants conspired with the non-newspaper defendants to misappropriate Garlick Parkside’s name and to destroy its business. It is settled that “ the mere general allegations of fraud or conspiracy are of no value as stating a cause of action.” (Wood v. Amory, 105 N. Y. 278, 282; see, also, Knowles v. City of New York, 176 N. Y. 430, 437.) It is necessary that plaintiffs plead and prove the independent acts committed by defendant newspapers which are the basis of the alleged tortious conduct. As the court stated in Cuker Ind. v. Crow Constr. Co. (6 A D 2d 415, 417): “ The allegation of a civil conspiracy, without more, does not in and of itself give rise to a cause of action. The actionable wrong lies in the commission of a tortious act, or a legal one by wrongful means, but never upon the agreement to commit the prohibited act standing alone. The allegations of conspiracy serve to enable a plaintiff to/ connect a defendant with the acts of his co-conspirators where without it he could not be implicated. (See Green v. Davies, 182 N.Y. 499, 504; Rhodes v. Ocean Acc. & Guar. Corp., *235 App. Div. 340; Brackett v. Griswold, 112 N. Y. 454, 466, 467; Miller v. Spitzer, 224 App. Div. 39; Cohen v. Fisher & Co., 135 App. Div. 238; Moskin v. Lyden, 200 App. Div. 304.) ” Plaintiffs have not met this burden. Evidentiary facts sufficient to defeat a motion for summary judgment have not been proffered with regard to the seventh cause of action. Plaintiffs have not pleaded or proved that the newspaper defendants performed acts of misappropriation of Garlick Parkside’s good will and reputation or participated in a scheme to pass off Garlick as Garlick Parkside. All that is submitted is that these defendants published the offending advertisement and nothing more.
The ninth cause of action suffers from the same defects. The essence of a cause of action in unfair competition is misappropriation of a commercial advantage belonging to another. As *541 was stated in Dior v. Milton (9 Misc 2d 425, 431): “ There is no complete list of the activities which constitute unfair competition. The general principle, however, evolved from all of the cases is that commercial unfairness will he restrained when it appears that there has been a misappropriation, for the commercial advantage of one person, of a benefit or property right belonging to another. (Metropolitan Opera Assn. v. Wagner-Nichols Recorder Corp., 199 Misc. 786, affd. 279 App. Div. 632, supra; Handler, Unfair Competition, 21 Iowa L. Rev. 175; 1 Nims on Unfair Competition and Trade-Marks [4th ed.. 1947], chs. I, II; Schechter, The Rational Basis of Trademark Protection, 40 Harv. L. Rev. 813.) ” Plaintiffs’ complaint and the affidavits submitted in opposition to this motion do not contain the requisite allegations and proof that the newspapers committed acts of unfair competition or aided the non-newspaper defendants in their alleged scheme.
This court now turns to plaintiffs ’ contention that, even in the event that the court finds that the newspaper defendants have not committed acts of unfair competition, these defendants should still be found liable because they have committed some form of tortious conduct. The question presented by this argument, i.e., under what circumstances, if any, does the conduct of a newspaper which publishes an advertisement that injures the advertiser’s competitors subject it to tortious liability, is both novel and of fundamental importance.
In most cases in which recovery has been sought for economic injuries suffered because of the publication of an advertisement in a newspaper, suit has usually been brought only against the advertiser. There have, however, been a few cases in which the newspaper which published the advertisement has also been joined as a party. In most of these cases the newspaper has been sued for libel. (See Golden Buddha v. New York Times Co., 182 Misc. 579, affd. 267 App. Div. 903; Warehouse Willy v. Newsday, Inc., 10 A D 2d 49.) In one case, however, the person who allegedly suffered injury to both his reputation and his business because of a published advertisement sought recovery on the theory, inter alia, that the advertisement was calculated to intentionally cause injury to the plaintiffs. (Denis v. Reynolds Tobacco Co., 303 N. Y. 985.) The Court of Appeals, without opinion, affirmed the Appellate Division (279 App. Div. 78) which had dismissed the complaint on the grounds that the advertisement complained of was not reasonably susceptible to the interpretation advanced by plaintiffs in that case. The court, however, did not deal with the fundamental question *542 of whether and under what circumstances a newspaper could be held liable for publishing an advertisement.
This court is of the opinion that there are circumstances under which a newspaper should be held liable under traditional principles of tort law for the publication of a false advertisement which causes injury to the advertiser’s competitor. The publication of an advertisement which contains information that is false or misleading should be actionable if done maliciously or with intention to harm another or in reckless disregard of the consequences for the following reasons: generally a person who maliciously makes an untrue statement of another may be held liable for the harm resulting from that statement. In Gale v. Ryan (263 App. Div. 76, 78), the court stated: “It has been held (Ratcliffe v. Evans, [1892] 2 Q. B. 524, 527):
‘ That an action will lie for written or oral falsehoods, not actionable per se nor even defamatory, where they are maliciously published, where they are calculated in the ordinary course of things to produce, and where they do produce, actual damage, is established law. Such an action is not one of libel or of slander, but an action on the case for damage wilfully and intentionally done without just occasion or excuse, analogous to an action for slander of title. ’
“ To the same effect is the decision of our Court of Appeals in Al Raschid v. News Syndicate Co. (265 N. Y. 1). (See, also, Saknond on Law of Torts [8th ed.], p. 612; Restatement, Law of Torts, § 873.) The Restatement says: ‘ A person who, with knowledge of its falsity, makes an untrue statement concerning another which he realizes will harm the other is liable to the other from such resulting harm as he should have realized might be caused by his statement. ’ ’ ’
Similarly, in Penn-Ohio Steel Corp. v. Allis-Chalmers Mfg. Co. (7 A D 2d 441, 444), the court stated: “ The utterance or furnishing of false and misleading information may be actionable if done maliciously or with the intention to harm another, or so recklessly and without regard to its consequences, that a reasonably prudent person should anticipate that damage to another will naturally follow. It has been occasionally suggested that such an action is within the orbit of prima facie tort. There is no valid support in law for the suggestion. The tort of injurious or intentional falsehood finds its genesis in legal history long, long before the comparatively recent development in the area of intentional harms, which possibly have been misdescribed as ‘ prima facie torts ’. It may well be that much of the difficulty encountered in these cases emanates from the indiscriminate use of labels. If, therefore, one must be attached, *543 perhaps other terms such as ‘ injurious falsehood ’ (86 G. J. S., Torts, § 48; Salmond, Torts [11th ed.], pp. 703-704), or an ‘ action for damage resulting from intentional falsehood ’ (Rager v. McCloskey, 305 N. Y. 75, 80, supra) may he better.” (See, also, Morrison v. National Broadcasting Co., 24 A D 2d 284; Squire Records v. Vanguard Recording Soc., 25 A D 2d 190; Henkin v. News Syndicate Co., 27 Misc 2d 987.) While none of these cases involves the liability of a newspaper for the publication of an advertisement, this court is of the opinion that the publication of advertisements should come under the broad, general rules set forth in the leading cases cited above. Therefore, if a newspaper publishes false and misleading advertisements maliciously or with the intention to harm another or so recklessly and without regard to its consequences that a reasonably prudent person would anticipate the damage, that newspaper should be held accountable for its conduct in the same manner as is any other person who commits such a tortious act.
Plaintiffs, however, would have this court go further in setting forth the standard of care to be observed by a newspaper which publishes advertisements. They would have this court set forth a rule that once a newspaper received notice from a competitor of an advertiser that an advertisement which was published was false or misleading that newspaper would publish the advertisement at its peril. This court does not agree. Such a rule would make a newspaper an arbiter of the conflicting claims of competing advertisers and would impose an intolerable burden upon newspapers and would, in the end, have a chilling effect upon them since they would have to refuse many items submitted because of possibility that publication would lead to liability. Nor should the onerous burden be placed upon newspapers under ordinary circumstances to conduct investigations in order to determine the effect of a questioned advertisement. Even in the case at bar, for example, reasonable judges could disagree as to whether the advertisement published by the newspaper defendants was or was not false and misleading. Therefore, this court is of the opinion that a standard that is consistent with protecting the public from irresponsible conduct by newspapers and that at the same time preserves the right of newspapers to publish advertisements should be that the newspaper is only liable if it publishes a false advertisement maliciously or with intent to harm another or acts with total reckless abandon.
From the pleadings and affidavits submitted to the court, it is obvious that in this case the conduct of defendant newspapers does not come close to approaching that standard. All *544 that is alleged and proven is the publication of the advertisement and, as against some of the newspapers, the continued publication after notice that plaintiffs deemed the advertisement injurious. There is no showing of intent to harm or malice, nor was the conduct of these newspapers reckless.
Accordingly, the four motions for summary judgment dismissing the complaint are granted in all respects.