OPINION OF THE COURT
Thomas Aloi, J.
Plaintiff’s complaint — which she expressly describes as sounding in negligence alone — alleges that on March 9, 1985 defendant published in the classified section of its newspaper an advertisement which read: "middle aged female looking for male companionship ages 18-22. Call anytime, 829-2868, ask for Karen”; that, although the published telephone number was hers, she did not place the advertisement or authorize anyone else to do so for her; that the advertisement was submitted to the newspaper in a handwritten request for publication purportedly signed by her, accompanied by a cash payment of $3; that following the publication plaintiff received a number of telephone calls, some of which were obscene, such *478 that she procured a new, unlisted phone number; that by reason of all the foregoing she has been in fear for the safety of herself and her two children who live with her and has been subjected to sexual overtures, including one instance of a strange man coming to her door in purported response to the advertisement, which have made her nervous and upset. Alleging that it was negligent of defendant not to have called her at the number included in the advertisement to verify that the placement of the advertisement had been authorized by her, plaintiff demands damages for the mental anguish claimed to have resulted from defendant’s neglect.
On these cross motions for summary judgment, evidentiary support for the foregoing allegations is provided by an affidavit of plaintiff. An affidavit by defendant’s general manager adds the fact that the request received by the newspaper for publication of the advertisement in question was unsigned but came by mail in an envelope on the back flap of which plaintiff’s name was printed.
In her verified bill of particulars plaintiff asserts that, in addition to the mental anguish alleged in her complaint, she sustained damages in the form of curtailment of her earnings as a casual, part-time hairdresser in her home by reason of her failure any longer to be listed in the telephone directory, which she "estimates * * * has cut down her supplemental income to one-half of its former level”, and in the form of minor charges levied by the telephone company for changing to an unlisted number.
An additional submission by defendant’s general manager states, with itemized detail, that during the month of March 1985, when the subject advertisement appeared, 3,074 classified ads were published by the paper.
Expressly disclaiming any intent to assert a claim against defendant in defamation, plaintiff contends that she has made out a case for recovery for her mental anguish predicated on a negligent failure by defendant to have verified that the advertisement was authorized by her before publication, asserting that a mere telephone call by an employee of the paper to the number given in the advertisement would have disclosed the absence of any authorization and thereby avoided the offensive harassment which she claims was foreseeable from the content of the ad. She relies almost entirely on a brief decision handed down in the Civil Court of the City of New York in 1971, never subsequently cited in any other litigation, in *479 which recovery for mental anguish was permitted by persons whose telephone number was erroneously included in a suggestive newspaper advertisement, resulting in obscene telephone calls (Blinick v Long Is. Daily Press Pub. Co., 67 Misc 2d 254). She tenders no other case, nor has defendant cited any, in which there has been an attempt to impose on a general newspaper the novel duty of authentication for which plaintiff here contends. Defendant, of course, asserts that no duty existed to verify authorization for the placement of the ad, and that, in any event, no cause of action lies for mental anguish occasioned by its conduct.
On the question of duty to verify, defendant’s position is the more persuasive, and finds support in cases in the field of publishers’ liability which, if imposed at all, is commonly imposed within the principles of the law of defamation, with all the strictures — constitutional and otherwise — attendant on that body of law.
Plaintiff acknowledges that there are reported decisions that have refused to impose liability on publishers of false information for negligence in failing to verify the accuracy of the content of published items (e.g., Pressler v Dow Jones & Co., 88 AD2d 928; Rubinstein v New York Post Corp., 128 Misc 2d 1; Hernandez v Underwood, Sup Ct, NY County, June 1, 1981 [Okin, J.]; see also, Goldstein v Garlick, 65 Misc 2d 538). (It is of course false information in the advertisement in question about which plaintiff is complaining — i.e., the representation that Karen, at the telephone number given, was soliciting attention from young men.) Plaintiff seeks, however, to take herself out of the nonliability cases by asserting that a particular relationship existed between her and defendant, which gives her status beyond that of the general public to claim a duty owed to verify the advertisement before publication. Referring to a contractual duty owed to advertisers, she makes a jump to conclude that, because she too was an identifiable individual, a duty to her existed. In this respect, however, there is no significant distinction between her and the plaintiff in the Rubinstein case — a plaintiff concerning whom a paid death notice had been prematurely printed in defendant’s newspaper but who nevertheless was denied recovery for the paper’s alleged negligence in failing to verify the fact of death.
Plaintiff also lays great emphasis on (1) the nature of the advertisement about which she objects (characterized by her as "semi-salacious”, but which does not solicit any illegal *480 conduct), which she contends carried a potential for annoying harassment in the event the ad were unauthorized, and (2) the circumstances attending its submission to defendant (handwritten and unsigned, with payment in cash rather than by check), which she says should have created a suspicion as to its authenticity. In view of these factors creating foreseeability of the mental anguish which she sustained, she argues that a duty to verify before publication arose.
However, the fact that injury to the plaintiff was foreseeable "alone is not sufficient to establish liability when, as here, there is no showing of any duty owed to the plaintiff” (Lafferty v Manhasset Med. Center Hosp., 54 NY2d 277, 280). As the Court of Appeals has only recently said: "Duty in negligence cases is defined neither by foreseeability of injury (Pulka v Edelman, supra [40 NY2d 781] at p 785) nor by privity of contract. * * * it is still the responsibility of courts, in fixing the orbit of duty, 'to limit the legal consequences of wrongs to a controllable degree’ (Tobin v Grossman, 24 NY2d 609, 619; see also, Howard v Lecher, 42 NY2d 109), and to protect against crushing exposure to liability (see, Pulka v Edelman, 40 NY2d 781, supra; Ultramares Corp. v Touche, 255 NY 170). 'In fixing the bounds of that duty, not only logic and science, but policy play an important role’ (De Angelis v Lutheran Med. Center, 58 NY2d 1053, 1055; see also, Becker v Schwartz, 46 NY2d 401, 408). The courts’ definition of an orbit of duty based on public policy may at times result in the exclusion of some who might otherwise have recovered for losses or injuries if traditional tort principles had been applied.” (Strauss v Belle Realty Co., 65 NY2d 399, 402-403.)
In this court’s view, the public policy consideration is a compelling factor which militates against recognition of a duty such as that for which plaintiff argues in the circumstances of the present case and which persuades this court to reject the result reached by the New York City Civil Court in the Blinick case (67 Misc 2d 254, supra). What cannot be overlooked is that defendant is an active component of the public news-distributing community. The classified advertisements which run in its newspaper serve at least two functions —they are an integral part of and facilitator of commerce in the area served by the paper, and they underwrite in part the cost of publication of the news-carrying vehicle. It demands little imagination to conceive the consequences with respect to such advertisements if the publisher were required to verify authorization for publication of each classified ad — even by *481 telephone communication as suggested by plaintiff — or to run the risk of imposition of damages for mental anguish which might follow publication of an unauthorized ad. With the volume of classified ads printed daily (typified by the more than 3,000 ads handled by defendant’s paper in a month), a need for prepublication telephone authentication — surely involving multiple calls to make contact in at least some instances — would impose an unreasonable burden on a daily newspaper, accompanied of course by increased cost in this form of advertising, so frequently used by the casual advertiser. It would moreover have a likelihood for destroying the present currency of such advertising, which now creates in both placers and users of classified ads a reliance that, with Sunday edition exceptions, advertisements appear in print within a matter of hours after their submission for publication.
Apparently sensitive to these consequences, plaintiff attempts to restrict their operation by limiting her demand for a duty to verify to suggestive personal ads. The limitation is without logic, however, when it is recognized that harassment in the form of repeated, unsolicited telephone calls might result from publication of any one of a limitless variety of unauthorized advertisements. Indeed, the appearance of a classified ad for the sale of an identified, late-model motor vehicle at what would seem to be a heavily discounted price might well generate an annoying flood of responses which would beleaguer the subscriber of a telephone number included in such an ad without authorization. The annoyance in such a situation would vary at most only in degree from that experienced by plaintiff. What justification would there be for withholding judicial relief from such a subscriber while awarding it to plaintiff?
Nor is the court satisfied that the submission of the particular advertisement in question in handwritten form, or the payment in cash of the $3 charge for publication, was sufficient to create such a suspicion with respect to authenticity as to mandate telephone verification with plaintiff. The conclusion may readily be drawn from examining any day’s published classified ads that the medium is not infrequently used by the occasional advertiser, who either may not have ready access to or may not take the trouble to use a typewriter for the submission of a single ad. That conclusion, taken with the minimal cost of the ad and present banking practice of charging for checks, refutes any suspicion plaintiff claims should *482 have been generated by the manner in which this ad was submitted to defendant.
In sum, on the evidentiary showing tendered on these cross motions for summary judgment, plaintiff has failed to establish the existence of any duty owed to her by defendant to verify authorization by her of publication of the advertisement on which her action is based. Summary judgment dismissing the complaint is therefore appropriate.
Concluding, as it does, that there has been no breach of any duty owed to plaintiff, the court does not reach the question whether damages from mental anguish, the only kind of damages pleaded or established,* might be recovered in this action predicated on negligent conduct by the defendant in the use of words. Compensation for negligently created emotional injuries has been the subject of an evolving body of case law (e.g., Bovsun v Sanperi, 61 NY2d 219; Kennedy v McKesson Co., 58 NY2d 500), and no appellate court decision supporting recovery for such injuries in circumstances similar to those here demonstrated has been called to the court’s attention.

 Plaintiffs attempt by her bill of particulars to expand her damages to include pecuniary loss in the form of diminished income as a part-time hairdresser and of the charge for transferring her telephone to an unlisted number is to no avail on the motions for summary judgment. Her failure to establish the fact — as contrasted with the amount — of damage other than mental distress, at this stage is fatal to a claim of other types of damages. No evidentiary showing of actual loss of earnings has been made; there is nothing more than sheer speculation by plaintiff as to curtailment of her business. The telephone company’s charge is de minimis.