**John PITTMAN, et al.**

v.

**DOW JONES & COMPANY, INC.,
d/b/a the Wall Street Journal.**

Civ. A. No. 86–2885.

United States District Court,
E.D. Louisiana.

June 19, 1987.

Tom Matheny of Matheny & Pittman, Hammond, La., for plaintiff.

Jack M. Weiss & Mary, L. Strong of Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., for defendant.

## ORDER AND REASONS

FELDMAN, District Judge.

The parties agree that this case may be resolved on the cross-motions for summary judgment which are presently before the Court. The facts have been stipulated, and the only issue is one of law: Whether, under Article 2315 of the Louisiana Civil Code, a newspaper of general circulation is liable to its readers for the unintentional publication of a fraudulent advertisement. The Court holds that a newspaper is not liable under the facts of this case for the unintentional publication of a fraudulent advertisement and, therefore, the defendant's motion for summary judgment is granted and plaintiffs' motion is denied.

Plaintiffs, John Pittman and Iddo Pittman, Jr., sued the defendant publisher of the Wall Street Journal after losing $50,000 which they invested in a Texas financial institution, Central Mortgage and Trust Company. Central advertised in the Wall Street Journal, offering "jumbo" interest rates on deposits. Plaintiffs are but two of many investors who deposited large sums with Central before Central went bankrupt.[1] Both the ad in the Wall Street Journal and documents which Central furnished directly to plaintiffs represented that funds deposited with Central were backed by the U.S. Government; those statements were false. The parties agree, however, that the Wall Street Journal was not aware of the falsity of the statements. Since plaintiffs have not been able to recover any of their losses from Central, they seek recovery from the Wall Street Journal under various theories of tort, contract and quasi-con-

---

1. Total losses by investors, including companies the size of Continental Airlines, total $17 million. It is the magnitude of such losses, and the potential that a newspaper of general circulation could be responsible for a large portion of those losses if the Court granted the kind of relief sought by plaintiffs, which is one of the factors that must be taken into consideration in determining whether newspapers should be held liable for advertisements which turn out to be false. Also, it seems helpful to simply observe that this is a diversity case under 28 U.S.C. § 1332.

tract. The Court holds that the Wall Street Journal is not liable under any of the asserted theories.

■ It is important to begin with the general observation, since we are dealing with a newspaper of general circulation, that "[n]o action for damages lies against a newspaper for merely inaccurate reporting when the publication does not constitute libel." *Langworthy v. Pulitzer Publishing Co.*, 368 S.W.2d 385, 390 (Mo.1963). The attitude of courts towards newspapers of general circulation may be fairly characterized as one of somewhat understandable protectionism because of the widespread judicial perception of the necessity to preserve the free flow of information to the public by way of the media. Thus, a newspaper has no duty, whether by way of tort or contract, to investigate the accuracy of advertisements placed with it which are directed to the general public, unless the newspaper undertakes to guarantee the soundness of the products advertised. See *Demuth Development Corp. v. Merck & Co.*, 432 F.Supp. 990, 993–994 (E.D.N.Y. 1977); *Gutter v. Dow Jones, Inc.*, 22 Ohio St.3d 286, 490 N.E.2d 898, 902 (Ohio 1986); *Hanberry v. Hearst*, 276 Cal.App.2d 680, 81 Cal.Rptr. 519 (1969). Courts seem to be sensitive to the devastating liability notion since to ignore such arguments could have the effect of discouraging the publication of ads dealing with valuable public information to enable people to make informed choices. Quite simply, courts have placed more value on the societal benefits of information availability than on the rights of private persons who claim to have been harmed. *Demuth, Id.* at 993; *Gutter, Id.* at 490 N.E.2d at 901–902.

A New Jersey court said it most directly in *Yuhas v. Mudge*, 129 N.J.Super. 207, 322 A.2d 824, 825 (App.Div.1974):

"We ... hold that no such legal duty rests upon respondents unless it undertakes to guarantee, warrant or endorse the product. To impose the suggested broad legal duty upon publishers of nationally circulated magazines, newspapers and other publications, would not only be impractical and unrealistic, but

would have a staggering adverse effect on the commercial world and our economic system. For the law to permit such exposure to those in the publishing business who in good faith accept paid advertisements for a myriad of products would open the doors 'to a liability in any indeterminate amount for an indeterminate time to an indeterminate class.'

Plaintiffs rely on *Blinick v. Long Island Daily Press Publishing Co., Inc.*, 67 Misc.2d 254, 323 N.Y.S.2d 853 (Civ.Ct.1971), but *Blinick* is of little precedential value. In that New York Civil Court case, plaintiff sued a newspaper and its advertiser because her home telephone number was mistakenly published in sexually suggestive singles ads. She received a host of unwanted and obscene telephone calls, and sued for her humiliation and personal anguish. Both the advertiser and the newspaper were found liable because, the Court said, it was highly foreseeable that injury would follow from the publication of an incorrect telephone number in the ad. All the newspaper needed to do was verify the telephone number, and it did not do so. Not only does *Blinick* seem patently result-oriented to the facts in question in that case, it has been repudiated by higher New York courts which have refused to impose liability on publishers who failed to verify the accuracy of the content of published information. See *Vaill v. Oneida Dispatch Corp.*, 129 Misc.2d 477, 493 N.Y.S.2d 414 (Sup.Ct.1985); *Pressler v. Dow Jones & Company, Inc.*, 88 A.D.2d 928, 450 N.Y. S.2d 884 (1982).

■ The Court has found no Louisiana cases on point, and the parties have cited none. But the law is settled in other jurisdictions that a duty such as that argued for here by plaintiffs may not be imposed on the Wall Street Journal. In New York, for example, publication of a false advertisement is actionable only if the ad was published maliciously, with intent to harm, or in reckless disregard of the consequences of the ad. See *Goldstein v. Garlick*, 65 Misc.2d 538, 318 N.Y.S.2d 370, 374 (Sup.Ct. 1971). To impose the burden of investigating the accuracy of every ad would, under ordinary circumstances, be too onerous.

*Goldstein, Id.* at 376. See *Pressler v. Dow Jones, Inc.,* 88 A.D.2d 928, 450 N.Y.S.2d 884 (1982); *Yuhas v. Mudge, supra.* In weighing private and public considerations, as the Court must, the public policy of not subjecting newspapers to the chilling prospect of hordes of suits by disgruntled readers of inaccurate ads dominates, and is typically represented by the language of the Ohio Supreme Court in *Gutter:*

> "In this case, we similarly conclude that a complaint alleging that a newspaper reader or subscriber relied to his detriment in making securities investments based on a negligent and inaccurate report in a newspaper does not state a cause of action in tort against the newspaper's publisher for 'negligent misrepresentation.' *In such a case, the competing public policy and constitutional concerns tilt decidedly in favor of the press when mere negligence is alleged."* page 902 (emphasis added).

See also *Alm v. Van Nostrand Reinhold Co., Inc.,* 134 Ill.App.3d 716, 89 Ill.Dec. 520, 480 N.E.2d 1263 (1985). Thus, the clear thrust of the state decisions is that no duty in tort exists for a newspaper publisher to investigate its advertisers for the correctness of the ads placed in the publication, even though the Journal is arguably one held in high esteem whose very stature lends credibility to the advertisements themselves. *Yuhas v. Mudge, supra.*

The plaintiffs' claims do not stop at the boundary of tort law. Not satisfied that the Wall Street Journal has offended notions of tort, plaintiffs argue that the conduct of the Journal also violates theories of contract and quasi-contract.[2] Plaintiffs' assertions under theories of contract and quasi-contract are also without merit. The cases cited by plaintiff simply do not apply. They deal only with the protection which courts have afforded to advertisers who have sued for losses suffered as a result of the newspaper's negligence regarding the ads placed. They do not apply to the facts before the Court. See *Barr v. Southern Tel. & Tel. Co.,* 13 N.C.App. 388, 185 S.E.2d

714 (1972); *Meridian Star v. Kay,* 207 Miss. 78, 41 So.2d 746 (Miss.1949). Similarly, *Pettengill v. Booth Newspapers, Inc.,* 88 Mich.App. 587, 278 N.W.2d 682 (1979) is inapplicable. In *Pettengill* plaintiff was the subject of a defamatory ad placed by some unknown newspaper employee. The court awarded recovery because of the nature of the injury and the narrow factual focus of the case itself. No cases have been cited which would support the plaintiffs' theory of recovery under notions of contract or quasi-contract and in the absence of some special relationship which plaintiffs are able to show other than being mere readers and subscribers of the Wall Street Journal, the Court will not apply theories of contract or quasi-contract to impose liability. The First Amendment strongly counsels against adoption of a rule establishing the kind of liability plaintiffs seek. Newspapers are instruments of the free flow of information, commercial and otherwise, in our society. Commercial speech, although afforded less protection, is nevertheless protected under the First Amendment. Compare *Dunn & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* 472 U.S. 749, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985) with *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976).

Accordingly, for the foregoing reasons,

IT IS ORDERED:

Defendant's Motion for Summary Judgment is GRANTED, and plaintiffs' Motion for Summary Judgment is DENIED. Plaintiffs shall bear all costs. Judgment will be entered accordingly.

---

**2.** Before leaving the tort theory urged by plaintiffs, it is instructive to note that the Wall Street Journal did indeed make some effort to investigate Central before accepting the ad, and the parties have agreed that those efforts are not factually disputed.