OPINION OF THE COURT
Lewis R. Friedman, J.
With the inexorable march of time has come an age of technology of previously unimagined dimensions. Methods for *95 news delivery have advanced apace with general scientific achievements. While town criers had for centuries informed the local citizenry, general circulation newspapers eventually made criers superfluous. Early in this century, news, transmitted by radio and telephone, became available to subscribers through dedicated news tickers and to the public by "extra” editions of newspapers. Widely available radio and television made news known to the public within minutes of its occurrence. In the last few years, instantaneous news has become available to subscribers with access to a microcomputer and a telephone, even at home.
Do technological advances require rethinking legal principles that have existed for previous modalities? Do modern techniques for delivering the news change the rules applicable to its providers? This case raises the question of whether the providing of a premium service for instantaneous transmission of the news by computer-to-computer linkup places the news service at greater risk to readers than does the providing of the same news by another modality.
The relevant facts in this case are not in dispute. In September 1986, plaintiff, a law student and securities investor, became 1 of the more than 200,000 subscribers to a service, Dow Jones News/Retrieval, offered by defendant. The service provides what it advertises to be "timely”, "accurate” news; it can be accessed from a subscriber’s computer. The subscriber telephones defendant’s computer. Then, by use of a personal computer and modem, a device which converts computer signals for telephone transmission, the subscriber enters the necessary passwords and access codes to set up an instantaneous, continuous, "interactive” "on-line” linkage with defendant’s computer, thus allowing access to the Dow Jones News Service. The service is "interactive” in that the subscriber describes his or her requests through a home or business computer; defendant’s computer responds and, at a charge of $3 per minute, searches for the items the subscriber has requested.
Plaintiff asserts that he received a news report from defendant which was false and misleading in that it omitted a material fact. The news item, datelined Calgary, referred to a transaction involving the restructuring of Husky Oil, a Canadian corporation; it did not mention that the prices referred to were in Canadian, not United States, dollars. Plaintiff claims that he relied on the pricing in the report to his detriment.
*96 Defendant, based on affidavits describing the events, moved to dismiss the complaint for failure to state a cause of action. This court provided written notice to both parties of its intention to treat the motion as one for summary judgment. (CPLR 3211 [c].) Additional affidavits have been submitted.
The theory of the complaint is that defendant negligently published false and misleading statements. New York has long recognized such a cause of action. Liability exists "only where there is a duty, if one speaks at all, to give the correct information.” (International Prods. Co. v Erie R. R. Co., 244 NY 331, 338 [1927].) In addition to knowledge of the possibility of detrimental reliance, "the relationship of the parties * * * must be such that in morals and good conscience the one has the right to rely upon the other for information, and the other giving the information owes a duty to give it with care.” (International Prods. Co. v Erie R. R. Co., supra, at 338; Doyle v Chatham & Phenix Natl. Bank, 253 NY 369, 377 [1930]; see, Ultramares Corp. v Touche, 255 NY 170, 180-185 [1931] [an accountant may be liable for a negligent audit opinion but only to a circumscribed class of potential plaintiffs].) The cause of action has been severely limited over the years to avoid impinging on basic rights. (Advance Music Corp. v American Tobacco Co., 268 App Div 707, 710-711 [1st Dept 1945], revd on other grounds 296 NY 79 [1946]; Sacco v Herald Statesman, 32 Misc 2d 739.) Restatement (Second) of Torts § 552 (2) also supports limiting the class of plaintiffs who may sue for negligent misstatements; liability "is limited to loss suffered [a] by the person or one of a limited group of persons for whose benefit and guidance” the speaker acts (emphasis added). That is, as a matter of public policy, the class of potential plaintiffs must be carefully circumscribed to avoid the potential of unlimited liability.
New York long ago held that a news service is not liable to its readers for negligent false statements. (Jaillet v Cashman, 115 Misc 383 [Sup Ct 1921], affd 202 App Div 805 [1st Dept 1922], affd 235 NY 511 [1923].) In Jaillet, the court held that Dow Jones & Company was not liable to a person who saw an erroneous item on its news ticker in a stockbroker’s office. Special Term held that "the relation of the defendant association to the public is the same as that of a publisher of a newspaper, and * * * its duties and obligations are to be measured by the same standard.” (Supra, 115 Misc, at 384.) The court further concluded that, although there was "moral obligation upon everyone to say nothing that is not true”, *97 there is no liability unless there is a breach of a specific duty to the injured party. (Supra, at 384.) The rationale of the holding was that unless the scope of liability was limited, the publisher of news might become liable to an undefined, infinite class of news readers. "If liability had been upheld, the step would have been a short one to the declaration of a like liability on the part of proprietors of newspapers.” (Ultramares Corp. v Touche, supra, at 185.)
The rule of Jaillet (supra) has been consistently followed even after International Prods. Co. v Erie R. R. Co. (supra). In Courteen Seed Co. v Hong Kong & Shanghai Banking Corp. (245 NY 377, 381 [1927]) the court articulated the principle that "negligent words are not actionable unless they are uttered directly * * * to one to whom the speaker is bound by some relation of duty, arising out of public calling, contract or otherwise, to act with care if he acts at all.” More recently, in Pressler v Dow Jones & Co. (88 AD2d 928 [2d Dept 1982]), the court reversed a refusal to dismiss an action for damages based on a negligent misstatement, since "no special relationship existed between the parties”. (See, Roman v City of New York, 110 Misc 2d 799, 802 [Sup Ct, Queens County 1981] [no liability for misstatements in a text of general circulation].)
The Federal courts have followed the New York rule requiring a "special relationship” between the parties for liability for negligent misstatements. In Demuth Dev. Corp. v Merck & Co. (432 F Supp 990 [ED NY 1977]) the court, after surveying New York law, found no cause of action for publishing 276,500 copies of a manual that negligently stated, incorrectly, that plaintiffs chemical was poisonous. The court reasoned that the defendant had no special duty which " 'in morals and good conscience’ ” should make it liable to plaintiff. (Supra, at 993.)
The "special relationship” limitation on liability for negligent statements remains despite the weakening of the rule of privity. In White v Guarente (43 NY2d 356, 361 [1977]) the court held that an accountant may be liable to persons of a "known group possessed of vested rights, marked by a definable limit and made up of certain components”. (Credit Alliance Corp. v Andersen & Co., 65 NY2d 536, 548-551 [1985].) Even though the duty to make accurate statements is imposed by law, and not by contract or privity, the number of potential plaintiffs remains limited. (See, Glanzer v Shepard, 233 NY 236, 239 [1922]; Ultramares Corp. v Touche, supra, at 182; Hochfelder v Ernst & Ernst, 503 F2d 1100, 1107 [7th Cir 1974], *98 revd on other grounds 425 US 185 [1976]; cf., MacPherson v Buick Motor Co., 217 NY 382, 390 [1916]; Lawrence v Fox, 20 NY 268 [1859]; compare, De Bardeleben Mar. Corp. v United States, 451 F2d 140, 148-149 [5th Cir 1971], and Reminga v United States, 631 F2d 449, 451-452 [6th Cir 1980] [holding that the United States Government has a special duty to use "due care” in the publication of maritime and aviation charts], with State Bank v Maryann’s, Inc., 204 Mont 21, 664 P2d 295, 301-302 [1983]; Donnelly Constr. Co. v Oberg/Hunt/ Gilleland, 139 Ariz 184, 677 P2d 1292, 1296-1297 [1984]; Robert & Co. Assocs. v Rhodes-Haverty Partnership, 250 Ga 680, 300 SE2d 503, 504 [1983]; Devore v Hobart Mfg. Co., 367 So 2d 836, 839 [La 1979]; Cardozo v True, 342 So 2d 1053, 1056 [Fla App 1977]; Western Energy v Georgia-Pacific Corp., 55 Ore App 138, 637 P2d 223, 227-228 [1981] [which support the "special relationship” formulation].)
Plaintiff here argues that he had a "special relationship” with defendant because he had contracted* for its services and, thereby, came within the permitted, limited class of plaintiffs. He also contends that summary judgment should be denied because a finder of facts must determine whether a "special relationship” exists. (AFA Protective Sys. v American Tel. & Tel. Co., 57 NY2d 912; Hutchins v Utica Mut. Ins. Co., 107 AD2d 871, 872-873; Raymond Corp. v Coopers & Lybrand, 105 AD2d 926.) No trial is needed, however, where the facts do not, and cannot, create liability. (CPLR 3212 [b]; Alvarez v Prospect Hosp., 68 NY2d 320, 324; Zuckerman v City of New York, 49 NY2d 557, 562.)
The relationship between the parties here is the same as between any subscriber and a news service; it is functionally identical to that of a purchaser of a newspaper. The advances of technology bring the defendant’s service into the home or office of more than 200,000 persons; indeed even nonsubscribers may receive defendant’s service through computerized *99 linkages with other data base enterprises. There is no functional difference between defendant’s service and the distribution of a moderate circulation newspaper or subscription newsletter. The instantaneous, interactive, computerized delivery of defendant’s service does not alter the facts: plaintiff purchased defendant’s news reports as did thousands of others. The "special relationship” required to allow an action for negligent misstatements must be greater than that between the ordinary buyer and seller. (See, Coolite Corp. v American Cyanamid Co., 52 AD2d 486, 488; Everson v First Trust & Deposit Co., 46 AD2d 722; Dorsey Prods. Corp. v United States Rubber Co., 21 AD2d 866, affd 16 NY2d 925; Chase Manhattan Bank v Edwards, 87 AD2d 935, 936, affd 59 NY2d 817; Mathis v Yondata Corp., 125 Misc 2d 383; cf., Walter v Bauer, 109 Misc 2d 189, 191, mod on other grounds 88 AD2d 787.) Technological advances must continually be evaluated and their relation to legal rules determined so that antiquated rules are not misapplied in modern settings. "[W]ith new conditions there must be new rules.” (Cardozo, The Nature of the Legal Process, at 137 [Yale Paperbound 1960 ed].) Yet, if the substance of a transaction has not changed, new technology does not require a new legal rule merely because of its novelty.
The New York rule in Jaillet (supra) has generally been followed in other jurisdictions. (See, Restatement [Second] of Torts 552, comment c, illustration 2; MacKown v Illinois Publ. & Print. Co., 289 Ill App 59, 6 NE2d 526 [1937]; Curry v Journal Publ. Co., 41 NM 318, 68 P2d 168 [1937]; Langworthy v Pulitzer Publ. Co., 368 SW2d 385, 390 [Mo 1963] ["(n)o action for damages lies against a newspaper for merely inaccurate reporting when the publication does not constitute libel”]; Yuhas v Mudge, 129 NJ Super 207, 210, 322 A2d 824, 825 [1974] [relying on Ultramares Corp. v Touche, supra, found that liability for negligently publishing certain advertisements "would open the doors 'to a liability in an indeterminate amount for an indeterminate time to an indeterminate class’ ”]; Cardozo v True, supra [no liability for negligently publishing a cookbook which used poisonous ingredient]; Alm v Van Nostrand Reinhold Co., 134 Ill App 3d 716, 480 NE2d 1263 [1985]; Gutter v Dow Jones, 22 Ohio St 3d 286, 490 NE2d 898, 901-902 [1986]; Pittman v Dow Jones & Co., 662 F Supp 921 [ED La 1987] [no liability to "mere readers and subscribers of the Wall Street Journal”]; cf., Hanberry v Hearst Corp., 276 Cal App 2d 680, 81 Cal Rptr 519 [1969] [liability where publisher places its seal of approval on the items in its *100 publication]; see also, Hedley Byrne & Co. v Heller & Partners [1964] AC 465 [HL], and Nocton v Lord Ashburton [1914] AC 932 [HL] [applying the "special relationship” standard for liability for negligent misstatements].)
In Gutter v Dow Jones (supra) the court held that Dow Jones was not liable to an investor who read a misstatement in its newspaper. "In this case, we similarly conclude that a complaint alleging that a newspaper reader or subscriber relied to his detriment in making securities investments based on a negligent and inaccurate report in a newspaper does not state a cause of action in tort against the newspapers’s publisher for 'negligent misrepresentation.’ In such a case, the competing public policy and constitutional concerns tilt decidedly in favor of the press when mere negligence is alleged.” (Supra, 22 Ohio St 3d, at 291, 490 NE2d, at 902.) Plaintiff asserts that this case is different from one involving a newspaper; however, he provides no reason for treating a person who reads data on a computer screen differently from one who reads it on paper. The potential devastating effects of a holding of liability on the publisher is no different; the potential harm to the free dissemination of news and ideas is the same.
Even though a lesser standard protects advertisements (Posadas de Puerto Rico Assocs. v Tourism Co. of Puerto Rico, 478 US 328, —, 106 S Ct 2968, 2976 [1986]), liability has been denied for negligent publication of mistaken advertisements (Pressler v Dow Jones & Co., supra; Suarez v Underwood, 103 Misc 2d 445, affd 84 AD2d 787; Vaill v Oneida Dispatch Corp., 129 Misc 2d 477; Libertielli v Hoffman-LaRoche, 7 Media L Rep 1734 [SD NY 1981]; Demuth Dev. Corp. v Merck & Co., 432 F Supp 990, supra; Yuhas v Mudge, supra). The only New York case to the contrary, Blinick v Long Is. Daily News Press Publ. Co. (67 Misc 2d 254), does not correctly follow the cases finding liability for negligent misstatements, incorrectly evaluates the public policies requiring a free press to publish thousands of advertisements daily, and has been "rejected]” in this State and elsewhere (Vaill v Oneida Dispatch Corp., supra, at 480; Pittman v Dow Jones & Co., supra). While there is. liability for publishing advertisements with reckless abandon and for malicious or intentionally misleading advertisements (Goldstein v Garlick, 65 Misc 2d 538, 543; Suarez v Underwood, supra, 103 Misc 2d, at 447-448), Blinick’s holding of liability for negligence is simply wrong.
Plaintiff’s case here is also barred by the United States and *101 New York Constitutions. The First Amendment precludes the imposition of liability for nondefamatory, negligently untruthful news. In Time, Inc. v Hill (385 US 374, 387-389 [1967]) the Supreme Court held that a negligence standard opened the press to the "intolerable burden” of trying to satisfy a fact finder that its act had been reasonable in determining the accuracy of the news items portrayed. A free press must operate without the imposition of such "intolerable burdens” on reporting. The First Amendment guarantees that society will be able to receive news limited, if at all, only by the most carefully imposed, narrowly constructed, finely drawn, restraints in areas such as copyright, defamation, unfair competition, incitement and obscenity. (Gooding v Wilson, 405 US 518, 521-522 [1972]; Speiser v Randall, 357 US 513, 527 [1958]; Demuth Dev. Corp. v Merck & Co., 432 F Supp, supra, at 993; Gutter v Dow Jones, supra, 22 Ohio St, at 290-291, 490 NE2d, at 901-902.) "A broadly defined freedom of the press assures the maintenance of our political system and an open society.” (Time, Inc. v Hill, 385 US, supra, at 389.)
The societal right to free and unhampered dissemination of information precludes liability absent proof of knowing falsity or reckless disregard for the truth. (Gertz v Robert Welch, Inc., 418 US 323, 340 [1974].) There is some authority that Gertz does not apply to those who are not "media” defendants such as providers of credit reports to a limited class of subscribers; for them there is a lesser degree of First Amendment protection. (Greenmoss Bldrs. v Dun & Bradstreet, 143 Vt 66, 73, 461 A2d 414, 417 [1983], affd 472 US 749 [1985]; cf., e.g, Denny v Mertz, 106 Wis 2d 636, 318 NW2d 141, 152-153, cert denied 459 US 883 [1982]; Stuempges v Parke, Davis & Co., 297 NW2d 252, 257-258 [Minn 1980]; Harley-Davidson Motorsports v Markley, 279 Ore 361, 568 P2d 1359, 1362-1365 [1977]; Rowe v Metz, 195 Colo 424, 579 P2d 83, 84 [1978].) However, the Supreme Court’s plurality opinion in Dun & Bradstreet v Greenmoss Bldrs. (supra) avoided the "media”/"nonmedia” analysis; the dissent convincingly demonstrates that the distinction makes little sense since the cost of the service and the degree of its distribution are not related to the importance of the protection needed for the statement at issue. (472 US, supra, at 782, n 6.) "Owing to transformations in the technological and economic structure of the communications industry, there has been an increasing convergence of what might be labeled 'media’ and 'nonmedia.’ ” (472 US, supra, at 783, n 7.) The New York decisions do not appear to have reached the *102 "media”/"nonmedia” issue. Defendant here provides, in essence, a "wire service”; it should, therefore, be treated as a "media” defendant, entitled to the fullest protection of the First Amendment. (See, P.A.M. News Corp. v Butz, 514 F2d 272, 277 [DC Cir 1975].)
Plaintiff argues that at issue here is "a commercial transaction” to which the First Amendment is inapplicable. "Commercial speech” has been held to have a lesser degree of the First Amendment protection than other speech. (See, e.g., Dun & Bradstreet v Greenmoss Bldrs., supra; Posadas de Puerto Rico Assocs. v Tourism Co. of Puerto Rico, supra; Central Hudson Gas & Elec. v Public Serv. Commn., 447 US 557, 566 [1980]; Ohralik v Ohio State Bar Assn., 436 US 447, 456 [1978]; Virginia Pharmacy Bd. v Virginia Consumer Council, 425 US 748, 771-772 [1976].) Yet that restriction applies to "speech which does 'no more than propose a commercial transaction,’ Virginia Pharmacy Board v. Virginia Citizens Consumer Council, Inc.” (Posadas de Puerto Rico Assocs. v Tourism Co. of Puerto Rico, supra, 478 US, at —, 106 S Ct, at 2976; Pittsburgh Press Co. v Human Relations Commn., 413 US 376, 385 [1973].) Clearly the news report at issue here is not "commercial speech” (cf., Smith v California, 361 US 147, 150 [1959]). Plaintiff’s argument, that the report regarding Husky Oil was not of general concern to large numbers of persons, simply misses the point. News services, whether free to the public, as are television or radio, or more expensive, specialized media, such as defendant’s computerized data base, are instruments for the free flow of all forms of information, and should be treated as unquestionably within the First Amendment’s guarantee of freedom of the press.
The First Amendment’s protection of defendant’s news service is particularly appropriate in New York, where the State Constitution provides a broader scope of protection for speech than does the Federal Constitution. (People ex rel. Arcara v Cloud Books, 68 NY2d 553, 557-558 [1986]; People v P. J. Video, 68 NY2d 296 [1986].) The defendant’s service is one of the modern, technologically interesting, alternative ways the public may obtain up-to-the-minute news. It is entitled to the same protection as more established means of news distribution.
The court need not pass on the validity of defendant’s argument that its report is literally true. Plaintiff argues that the failure to disclose the currency used in the news report made it misleading regardless of the accuracy of the remain *103 der of the report. The Supreme Court stated in Gertz, "The First Amendment requires that we protect some falsehood in order to protect speech that matters” (418 US, supra, at 341; see, New York Times Co. v Sullivan, 376 US 254, 279 [1964]). The defendant’s motion to dismiss the action is granted.

 Even though the exact nature of the "contract” cannot be definitively determined on the record here, that does not effect the disposition. For the terms of the contract plaintiff relies on advertisements for defendant’s service. The documents submitted to the court include a formal printed agreement, prepared by defendant, which was received by plaintiff sometime after he commenced using the service. The agreement has unequivocal limitations of liability. It is not established that the agreement formed a part of the contract between the parties. There is also no proof whether plaintiff agreed to a limitation of defendant’s liability as a part of the "online” signup procedure, as is common with other computerized data base services.