GUTTER, APPELLEE, *v.* DOW JONES, INC., APPELLANT.

[Cite as Gutter *v.* Dow Jones, Inc. (1986), 22 Ohio St. 3d 286.]

(No. 85-1084—Decided March 19, 1986.)

*David L. Day Co., L.P.A., David L. Day* and *Dale D. Cook,* for appellee.

*Bricker & Eckler, Marshall L. Lerner, Patterson, Belknap, Webb & Tyler, Robert D. Sack, Robert P. LoBue* and *Craig Stewart,* for appellant.

CELEBREZZE, C.J. The narrow question of substantive law presented in this appeal is whether a general circulation newspaper is liable to one of its subscribers or readers for a non-defamatory negligent misrepresentation of fact in a news article relied on by the reader in choosing a securities investment which results in a financial loss because of a market decline. We recognize that many of the landmark cases concerning the rights guaranteed the press by the First Amendment to the United States Constitution and Section 11, Article I, of the Ohio Constitution involve distinguishable factual settings and legal issues (such as libel, commercial

speech, false light, prior restraint, obscenity, access, etc.) which are not germane to the instant cause.

However, much of the reasoning in these cases is instructive and provides guidance regarding the scope of constitutional restrictions, the competing interests involved, and the attendant public policy concerns.

The United States Supreme Court has recently reminded us "* * * that in cases raising First Amendment issues * * * an appellate court has an obligation to 'make an independent examination of the whole record' in order to make sure 'that the judgment does not constitute a forbidden intrusion on the field of free expression.' " *Bose Corp.* v. *Consumers Union of the United States, Inc.* (1984), ____ U.S. ____, 80 L. Ed. 2d 502, 515, quoting in part, *New York Times* v. *Sullivan* (1964), 376 U.S. 254, 284-286.

The general view is that "[n]o action for damages lies against a newspaper for merely inaccurate reporting when the publication does not constitute libel." *Langworthy* v. *Pulitzer Pub. Co.* (Mo. 1963), 368 S.W. 2d 385, 390. An accurate statement, reflecting the consensus of the majority of the nation's jurisdictions, is found in 58 American Jurisprudence 2d (1971) 148, Newspapers, Periodicals & Press Assns., Section 22, as follows:

"In the absence of a contract, fiduciary relationship, or intentional design to cause injury, a newspaper publisher is not liable to a member of the public to whom all news is liable to be disseminated for a negligent misstatement in an item of news, not amounting to libel, published by the publisher, unless he wilfully originates or circulates it knowing it to be false, and it is calculated to and does, as the proximate cause, result in injury to another person."

Recently, however, a growing number of courts have demonstrated a willingness to extend liability for negligent misrepresentation in special cases. For example, in the case of *Haddon View Investment Co., supra,* relied on by the appellate court below, we held in the syllabus that "[a]n accountant may be held liable by a third party for professional negligence when that third party is a member of a limited class whose reliance on the accountant's representation is specifically foreseen." In recognizing such a cause of action in tort we applied the elements contained in 3 Restatement of the Law 2d, Torts (1977) 126, 127, Section 552, which provides in relevant part:

"(1) One who, in the course of his business * * * supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

"(2) * * * the liability stated in Subsection (1) is *limited to loss suffered*

"(a) *by* the person or *one of a limited group of persons* for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; *and*

"(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction. * * *" (Emphasis added.) *Haddon View Investment Co., supra*, at 156, fn. 1. See, also, *id.* at 156-157.

As such, appellee may arguably be able to prove certain elements of the tort of negligent misrepresentation (*i.e.*, appellant was in the course of business; information was false; causation; lack of reasonable care; purpose and intent of publisher, etc.) which involve questions of fact. However, we conclude that as a newspaper reader, appellee does not fall within a special limited class (or group) of foreseeable persons as set forth in Section (2)(a) above.[2] Further, we question whether appellee's reliance on the news account, without verifying the trading status of the bonds with a broker or otherwise, could ever be considered "justifiable." A contrary result would in effect extend liability to all the world and not a *limited* class, such as the identifiable and foreseeable group of limited partners in *Haddon View Investment Co., supra*.[3] See, also, *Yuhas* v. *Mudge* (1974), 129 N.J. Super. 207, 322 A. 2d 824, 825.

More importantly, we believe that public policy and constitutional constraints support protection to newspapers for a negligent misstatement of fact such as the error made in the case *sub judice*. "Accuracy in news reporting is certainly a desideratum, but the chilling effect of imposing a high duty of care on those in the business of news dissemination and making that duty run to a wide range of readers or TV viewers would have a chilling effect which is unacceptable under our Constitution." *Tumminello* v. *Bergen Evening Record, Inc.* (D.N.J. 1978), 454 F. Supp. 1156, 1160. In that case Mr. Tumminello filed a tort action against the newspaper alleging that personal damage resulted from an erroneous news report which, like the instant case, did not involve defamation. In ruling favorably to the newspaper, the federal court correctly recognized, contrary to the appellate court *sub judice*, that important First Amendment interests are involved in news accounts: "The Court notes in passing that New Jersey *could not*, consistent with the requirements of the First Amendment, impose liability for a negligently untruthful news story. See *Time, Inc.* v. *Hill*, 385 U.S. 374, 87 S. Ct. 534, 17 L. Ed. 2d 456 (1967). Recovery may be had at best only for knowing or reckless falsehood. But even assuming

---

[2] Illustration 2 of 3 Restatement of the Law 2d, Torts (1977) 129, Section 552, is also of guidance: "The A Newspaper negligently publishes in one of its columns a statement that a certain proprietary drug is a sure cure for dandruff. B, who is plagued with dandruff, reads the statement and in reliance upon it purchases a quantity of the drug. It proves to be worthless as a dandruff cure and B suffers pecuniary loss. The A Newspaper is not liable to B."

[3] In *De Bardeleben Marine Corp.* v. *United States* (C.A. 5, 1971), 451 F. 2d 140, 148, the federal court of appeals observed that "the usual publishers of newspapers, treatises, and maps lack the financial resources to compensate an indeterminate class who might read their work. Potential liability would have a staggering deterrent effect on potential purveyors of printed material. * * *"

that the defendants' publication without confirmation constituted recklessness — a doubtful proposition itself — plaintiff may still not recover because, under traditional tort principles, he was not one to whom the defendants owed any particular duty of care. * * *'' (Emphasis added in part.) *Id.* at 1159-1160.

In an early New York case, the trial and appellate courts faced a scenario not unlike the instant case. The lower court concluded in *Jaillet* v. *Cashman* (1922), 202 App. Div. 805, 194 N.Y. Supp. 947, affirmed (1923), 235 N.Y. 511, 139 N.E. 714, that Dow Jones' ticker tape service, which supplied stock market quotes and financial news, stood in the same position as a newspaper publisher to the public, *i.e.,* similar duties and obligations. The court also concluded that Dow Jones, absent a special relationship, could not be held accountable by a private investor for a stock market loss occasioned by an unintentional mistake made in its financial news report.

More recently, the *Jaillet* decision was followed by a New York federal district court in *Demuth Development Corp.* v. *Merck & Co., Inc.* (E.D. N.Y. 1977), 432 F. Supp. 990. In *Merck,* the defendant published The Merck Index which contained information on chemicals and their manufacturers. The publisher circulated 276,500 copies of its index containing an allegedly inaccurate account that a certain chemical was poisonous when in fact it was non-toxic. The chemical manufacturer, which was also listed in the index as the chemical source, filed suit alleging a loss of business and seeking recovery from the publisher of four million dollars in damages. The district court granted summary judgment in favor of the publisher. As in *Jaillet,* the court could find no contractual or other special relationship between the parties. It reasoned in part:

''* * * Merck's right to publish free of fear of liability is guaranteed by the First Amendment, see *Gertz* v. *Robert Welch, Inc.,* 418 U.S. 323, 340, 94 S. Ct. 2997, 41 L. Ed. 2d 789 (1974), and the overriding societal interest in the untrammeled dissemination of knowledge. The right is circumscribed only by laws such as those respecting national secrets, copyright, obscenity, defamation and unfair competition. The court has already held that no claim for defamation is stated and plaintiff does not rely on any grounds other than negligence and willful misrepresentation.

''Plaintiff's theory of negligence finds no support in the pertinent New York cases. Assuming *arguendo* the *Index* reference to triethylene glycol was negligently erroneous and led plaintiff's customers to cease using its glycol vaporizer, plaintiff would have no claim for damages against Merck. *Jaillet* v. *Cashman,* 235 N.Y. 511, 139 N.E. 714 (1923) (Dow, Jones & Company not liable in negligence for incorrect information sent out over its ticker where no contractual or fiduciary relationship with plaintiff); * * *

''* * * The reason for such a rule is obvious. To quote Prosser * * *, it is required in order to avoid '[t]he spectre of unlimited liability, with claims

devastating in number and amount crushing the defendant because of a momentary lapse from proper care * * *.''

"* * * Such a holding, moreover, would serve neither justice nor the public interest because of its manifestly chilling effect upon the right to disseminate knowledge." (Footnotes omitted.) *Id.* at 993-994.

In this case, we similarly conclude that a complaint alleging that a newspaper reader or subscriber relied to his detriment in making securities investments based on a negligent and inaccurate report in a newspaper does not state a cause of action in tort against the newspaper's publisher for "negligent misrepresentation." In such a case, the competing public policy and constitutional concerns tilt decidedly in favor of the press when mere negligence is alleged.[4]

In order for a trial court to dismiss a complaint for failure to state a claim upon which relief can be granted, it must appear beyond a doubt from the complaint that the plaintiff can prove no set of facts entitling him to relief. *O'Brien* v. *University Community Tenants Union* (1975), 42 Ohio St. 2d 242 [71 O.O.2d 223]. In *Merck, supra,* at 995, the federal court concluded as follows: "In sum, plaintiff has failed to come forward with any specific facts showing that there is a genuine issue for trial. See *Dressler* v. *MV Sandpiper,* 331 F. 2d 130 (2 Cir. 1964). Generalized claims of business loss caused by defendant's exercise of its right to publish cannot overcome the clear absence of liability as a matter of law. Defendant is therefore entitled to summary judgment dismissing the complaint."

Based on all the above, we believe the trial court's Civ. R. 12(B)(6) dismissal was proper because appellant has an absolute defense as a matter of law to the negligence claim under the facts alleged in appellee's complaint. See *Lepucki* v. *Van Wormer* (N.D. Ind. 1984), 587 F. Supp. 1390.

Accordingly, the judgment of the court of appeals is reversed and the order of the trial court dismissing the action is reinstated.

*Judgment reversed.*

SWEENEY, LOCHER, HOLMES, C. BROWN, DOUGLAS and WRIGHT, JJ., concur.

---

[4] A stronger argument could be made by a plaintiff alleging libel or fraudulent, intentional or malicious misrepresentation, but such is not contended in the case at bar.