**PICKER INTERNATIONAL, INC., Plaintiff,**

v.

**MAYO FOUNDATION, et al., Defendants.**

No. 1:95–CV–2028.

United States District Court, N.D. Ohio, Eastern Division.

May 26, 1998.

Robert Louis Canala, Kenneth R. Adamo, Jones, Day, Reavis & Pogue, Cleveland, OH, Mark J. Skakun, III, Buckingham, Doolittle & Burroughs, Akron, OH, for Picker International, Inc.

Barry E. Sammons, Wayne E. Babler, Jr., Quarles & Brady, Milwaukee, WI, Robert Franklin Orth, Roderick, Myers & Linton, Akron, OH, John P. Murtaugh, Pearne, Gordon, McCoy & Granger, Cleveland, OH, Francis Helminski, Mayo Foundation, Rochester, MN, for Mayo Foundation, Medical Education and Research.

Richard E. Guster, Akron, OH, pro se.

## MEMORANDUM DECISION

GWIN, District Judge.

On March 9, 1998, Defendants Mayo Foundation and the Mayo Foundation for Medical Education and Research ("Mayo") filed a motion for judgment on the pleadings or for summary judgment. Defendants seek to strike Count V of plaintiff's complaint. In Count V, the plaintiff makes claim for negligent misrepresentation. With this motion, the Court decides whether a claim for the tort of negligent misrepresentation arises from a contract between two sophisticated parties acting at arm's length.

The Court finds that Ohio's economic loss rule precludes Count V. The plaintiff also fails to make out a claim to negligent misrepresentation under Ohio law. The Court grants the defendants' motion for summary judgment.

On May 7, 1998, Plaintiff Picker International ("Picker") filed a motion for leave to file a partial summary judgment motion. Picker seeks judgment on its defense of laches to Mayo's counterclaim charging patent infringement. The Court denies leave as Picker filed the motion after the deadline for dispositive motions.[1]

### I

Picker's second amended complaint in this diversity declaratory judgment action seeks relief for breach of contract (Count I), correction of ownership (Count II), non-joinder of inventor (Count III), patent invalidity (Count IV), and negligent misrepresentation (Count V). The Court earlier denied the defendants' Rule 12(b)(6) motion to dismiss the patent claim. Later, the Court denied defendants' motion for partial summary judgment on the breach of contract claim.[2] The

---

1. Picker claims Mayo unduly delayed in bringing its (counter)claim of patent infringement, and that Picker had not had sufficient time to conduct the discovery necessary to support a summary judgment motion. The Court ordered all dispositive motions be filed by March 9, 1998. The Court ordered that parties complete discovery necessary to support a dispositive motion by February 23, 1998, and that all discovery be completed by April 29, 1998. The Court notes that Picker opposed the defendants' motion for an extension of the discovery period. Picker did assert the laches defense in its answer to the counterclaim, and may raise the issue at trial.

2. This motion was converted from a motion to dismiss for failure to state a claim upon which relief could be granted.

Court also denied a motion to dismiss for lack of personal jurisdiction over the defendants.

In their counterclaim, the Defendant Mayo Foundation For Medical Education and Research seeks relief from Picker for patent infringement. The counterclaim says that the foundation is the owner of the United States Letters Patent No. 4,715,383 (the '383 patent) as a result of the merger of Mayo Medical Resources into the Mayo Foundation.

## II

In approximately 1982, Defendant Mayo purchased a magnetic resonance scanner ("MR scanner") from Plaintiff Picker.[3] Picker and Mayo also entered into a software license agreement. In this agreement, Picker granted a license to Mayo to use certain computer software for operating and using the MR scanner Mayo purchased.

Paragraph 7 of the agreement contains one of the specific terms and conditions of the software license:

> If the Licensee (Mayo), or any of its officers, agents, or employees devise any improvements in the Software, the Licensee shall disclose such improvements to Picker and Picker shall have a non-exclusive royalty free license to use such improvements and the right to grant sub-licenses thereof.

Plaintiff Picker claims that Defendant Mayo, after receiving Picker's software package, devised improvements in the software package. Mayo did not tell Picker about its improvements to the software package.

Rather, Mayo applied for and obtained the '383 patent, entitled "Method for Reducing Artifacts in NMR Images," based on the alleged improvements it devised in the software package. The government's Patent and Trademark Office issued the '383 patent on December 29, 1987. The '383 patent was assigned to Mayo Medical Resources, now known as the Mayo Foundation for Medical Education and Research.

Until 1994, Picker did not discover that Mayo had used the Picker MR scanner and software as the basis of the '383 invention. Picker says that Mayo's second scanner, a GE model, was not installed until after the first reduction to practice of its invention on the Picker scanner.

Near May 2, 1994, Mayo Medical Ventures made claim that Picker was infringing the '383 patent. Near June 1, 1994, Mayo Medical Ventures advised the plaintiff that the '383 patent had been sublicensed to two other manufacturers of MR scanners. Mayo receives royalties under these licenses.

Near September 26, 1994, Mayo Medical Ventures advised Picker that the development work on the improvements covered by the '383 patent had taken place on the MR scanner that Picker manufactured.

Defendants refuse to recognize Picker's rights as a non-exclusive royalty free licensee to the alleged improvements to the software package that Picker licensed to Mayo. Also, Mayo denies that Picker has rights to grant sublicenses to the software. Defendants refuse to recognize Picker's rights to share in the royalties generated by defendant's licensing of the '383 patent.

Under the software license agreement, Mayo had a duty to disclose to Picker all improvements to the software licensed from Picker. Picker says Mayo breached this duty by remaining silent about the improvements to the software Mayo devised and embodied in the '383 patent. Moreover, Mayo asserted in the specification of the '383 patent that the improvement claimed in that patent was incorporated on a General Electric machine. Picker claims that assertion was misleading as the improvement was devised on a Picker machine using Picker's software subject to the software license agreement.

Picker asserts it has been deprived of business opportunities, licensing fees, and its right to make, use, and sell the invention claimed in the '383 patent as a result of Mayo's negligent misrepresentations.

**3.** Defendant Mayo makes this motion. As such, facts are viewed in a light most favorable to the plaintiff.

## III

Mayo's motion to strike Picker's negligent misrepresentation claim is brought under Fed.R.Civ.P. 12(c) for judgment on the pleadings[4] or, in the alternative, under Fed. R.Civ.P.56 for summary judgment

Defendants timely filed their Rule 12(c) motion after the time for pleadings was closed. (Plaintiff answered the counterclaim on February 19, 1998 and defendants filed this motion on March 9, 1998.) When deciding a Rule 12(c) motion, a court must take all well-pleaded material allegations of the pleadings of the opposing party as true, and the motion may be granted only if the moving party is clearly entitled to judgment. *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir.1973).

Pursuant to Rule 56, summary judgment shall be rendered if the evidence presented in the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In assessing the merits of the motion, this court shall draw all justifiable inferences from the evidence presented in the record in the light most favorable to the nonmoving party. *Woythal v. Tex–Tenn Corp.*, 112 F.3d 243, 245 (6th Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 414, 139 L.Ed.2d 317 (1997). However, an opponent to a motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue

of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Miller v. Lorain County Bd. of Elections*, 141 F.3d 252, 258–59 (6th Cir.1998).

Under both rules, courts use similar standards. Factual inferences are construed against the moving party and the motion is denied unless the movant is entitled to judgment as a matter of law. 5A Charles Alan Wright, Arthur R. Miller, Federal Practice and Procedure § 1369 (2d. Ed.1990). However, it is not clear whether a Rule 12(c) motion should be granted when it would not dispose of the entire case. *Id.*

Since the movant in this matter is requesting only partial judgment covering the negligent misrepresentation claim, and because that claim fails as a matter of law, the Court will proceed under Rule 56 rather than Rule 12(c).

## IV

Ohio's economic loss rule bars Picker's claim for negligent misrepresentation. Picker claims it suffered injuries as a result of Mayo's negligent misrepresentations. Picker's alleged injuries are economic losses.[5]

■ Picker claims it lost business opportunities, licensing fees, and the rights to make, use and sell the invention claimed in the '383 patent. These are economic losses. They derive solely from the contract Picker alleges existed between Mayo and Picker. These damages are economic losses because the losses arise only as the result of one party's failure to perform a duty created by contract.

■ In Ohio it is well established that a party cannot bring a cause of action in tort (such as negligent misrepresentation) for

4. Rule 12(c) reads:

   **Motion for Judgment on the Pleadings.** After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

5. Economic damages are distinguished from personal damages and property damages. Further, Ohio courts make a distinction between direct economic losses and indirect economic losses. Direct economic losses include "the loss attributable to the decreased value of the product itself," while indirect economic losses are consequential damages, such as lost profits. *See Queen City Terminals, Inc.*, 73 Ohio St.3d at 614, 653 N.E.2d 661.

economic losses. In the absence of injury to persons or damage to property, economic losses cannot be recovered in tort. *Queen City Terminals, Inc. v. General American Transp. Corp.,* 73 Ohio St.3d 609, 614, 653 N.E.2d 661 (1995); *Floor Craft Floor Covering, Inc. v. Parma Community Gen. Hosp. Ass'n,* 54 Ohio St.3d 1, 3, 560 N.E.2d 206 (1990). This rule stops claims for torts such as negligent misrepresentation.

■ Picker may not recast its breach of contract claim as a tort claim, where the only duty breached is a contractual duty. Indirect economic damages "that do not arise from tangible physical injury to persons or from tangible property *may only be recovered in contract.*" *Queen City,* 73 Ohio St.3d at 615, 653 N.E.2d 661 (emphasis added).

V

■ Under Ohio law, negligent misrepresentation requires that a defendant be acting within the course of his or her business, profession or employment, or in any other transaction in which he or she has a pecuniary interest.

■ To be liable, the defendant must (1) supply false information; (2) for the guidance of others in their business transactions; (3) causing pecuniary loss to the plaintiff; (4) while the plaintiff justifiably relied upon the information; (5) and while the defendant failed to exercise reasonable care or competence in obtaining or communicating the information. *Delman v. City of Cleveland Heights,* 41 Ohio St.3d 1, 4, 534 N.E.2d 835 (1989); *Textron Financial Corp. v. Nationwide Mut. Ins. Co.,* 115 Ohio App.3d 137, 149, 684 N.E.2d 1261 (9 Dist.1996), *appeal dismissed,* 78 Ohio St.3d 1425, 676 N.E.2d 531 (1997). *See also Bellios v. Victor Balata Belting Co.,* 724 F.Supp. 514, 519 (S.D.Ohio 1989) (Ohio courts willing to extend liability for this tort only in special cases).

■ A core requirement is a special relationship under which the defendant supplied information to the plaintiff for the latter's guidance in its business transactions. This relationship occurs only in "special" circumstances. Usually the defendant is a professional (e.g., an accountant) who is in the business of rendering opinions to others for their use in guiding their business, and the plaintiff is a member of a *limited* class. *Haddon View Inv. Co. v. Coopers & Lybrand,* 70 Ohio St.2d 154, 157, 436 N.E.2d 212 (1982); *Gutter v. Dow Jones, Inc.,* 22 Ohio St.3d 286, 288–89, 490 N.E.2d 898 (1986). This "special" relationship does not exist in ordinary business transactions. *Id.*

■ Picker and Mayo did not have the type of "special" relationship that would allow Picker to bring a negligent misrepresentation claim. The contractual duties were tied to a commercial transaction. Mayo was a buyer and Picker was a seller without a fiduciary relationship. Nothing indicates that the relationship between these parties was anything other than an arms length agreement between two sophisticated parties.

Picker's claim is premised on two alleged misrepresentations. The first is Mayo's silence regarding its development of an alleged improvement to Picker's software after Mayo purchased the MR scanner from Picker. The second is Mayo's statement in the patent application process "that the improvement claimed in that patent was incorporated on a General Electric machine." Neither support a negligent misrepresentation tort under Ohio law.

■ In deciding whether defendants have supplied false information, Ohio courts have held that the alleged negligent misrepresentation must have been an affirmative false statement. An omission or silence will not satisfy this requirement. *Textron Financial Corp.,* 115 Ohio App.3d at 149, 684 N.E.2d 1261; *Guarantee Co. of North America v. City of Cleveland,* No. 1:95–CV–1936, 1997 WL 614406, at *6 (N.D.Ohio 1997) ("[U]nder Ohio law, '[n]egligent misrepresentation does not lie for omissions; there must be some affirmative false statement'" (citation omitted)). *See also Bellios,* 724 F.Supp. at 519 (in dismissing a negligent misrepresentation claim, the court noted that the claim "rests solely on alleged omissions and not on the supplying of false information for the guidance of others.")

 The statement in the Mayo patent is not sufficient because it was not directed to Picker and Picker does not allege it is "false information." Picker alleges that "Mayo asserted in the specification to the '383 patent that the improvement claimed in that patent was incorporated on a General Electric machine." While Picker does not cite a specific passage in the '383 patent, Picker can only be referring to column 5, lines 63–66 of the patent application. There, Mayo makes the following statement: "The preferred embodiment of the invention has been incorporated in an NMR imaging system which is commercially available from the General Electric company and is sold under the trademark 'SIGNA.' "

The statement contained in those lines is not alleged to be false. Picker does not really contend that the statement is false. To succeed on a claim for negligent misrepresentation, Picker must prove that Mayo "supplie[d] false information." *Delman*, 41 Ohio St.3d at 4, 534 N.E.2d 835.

Picker also tries to raise the issue of Mayo violating a duty of good faith and candor, and running afoul of a federal regulation,[6] in the patent application process. However, the Federal Circuit Court of Appeals has held that violation of this duty *owed to the patent office*, without any allegation of fraud, does not support a private cause of action for damages. *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059 (Fed.Cir.1998).

## VI

Accordingly, the Court will grant Mayo's motion striking Count V of the second amended complaint as one for partial summary judgment. Federal rules permit summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court also denies plaintiff leave to file an untimely motion for partial summary judgment on the laches issue. The

parties will proceed to trial on the counterclaim and the remaining counts in the second amended complaint.

IT IS SO ORDERED.

---

6. 37 C.F.R. § 1.56. Defendants vigorously deny any allegation Mayo breached the duty of candor and good faith both as a matter of law and a question of fact. *See* Defendants' Reply Memorandum In Support of Summary Judgment and Judgment On The Pleadings, at footnote 3.