OPINION
{¶ 1} Plaintiff-appellant Alan Schmiedebusch [hereinafter appellant] appeals from the March 29, 2004, Judgment Entry of the Delaware County Court of Common Pleas which granted summary judgment in favor of defendants-appellees Rako Realty, Inc. [hereinafter Rako] and Stonehenge Company [hereinafter Stonehenge] and the August 2, 2004, Judgment Entry of that same court which granted summary judgment in favor of defendants-appellees Jeff Scarpitti [hereinafter Scarpitti] and Re/Max Northeast Realty [hereinafter Re/Max].
 STATEMENT OF THE FACTS AND CASE {¶ 2} On October 3, 2003, appellant brought suit against defendants-appellees Rako, Stonehenge, Scarpitti and Re/Max. For the purposes of this appeal, the following facts are relevant to the claims.
 {¶ 3} Appellant was looking for a lot upon which to build a home. Appellant used a real estate agent, Scarpitti. Scarpitti was a licensed real estate agent with Re/Max. On or about February 12, 2002, appellant saw a Multiple Listing Service [hereinafter MLS] listing for a piece of property while he was on the internet. The MLS listing included a photo of the property and an accurate description of the property. Appellant became interested in the property. Appellant went to see the property and believed it appeared to be a big lot priced under other lots he had seen. According to appellant, the "For Sale" sign was placed on the property so as to indicate that the whole open area was one lot.[1] That "For Sale" sign was viewable in the MLS photo. Appellant contacted Scarpitti. Scarpitti contacted Daniel Rako of Rako Realty and indicated appellant's interest. Rako had listed the property. The property was owned by Stonehenge. On February 14, 2002, Rako faxed a copy of the plat plan and grade plan for the property and surrounding area to Scarpitti.
 {¶ 4} Appellant claims that he then viewed the lot with his builder and Scarpitti. Appellant claims that he followed the builder and Scarpitti around as they "walked off" the area. Deposition of appellant at 37. At that time, they discussed "how the house would sit on this lot, would it work, and we all came to the assumption that it would." Id. at 25.
 {¶ 5} Appellant chose to purchase the property. At the closing, the deed and mortgage documents contained an accurate description of the property and incorporated the MLS listing.
 {¶ 6} After the closing, appellant learned that he had not purchased as much land as he had thought. Appellant had purchased what is now known as lot #1494. Appellant had not purchased the adjoining lot, now known as lot # 1495. Appellant claims that he thought he was purchasing an area that included both lots.[2]
 {¶ 7} In the complaint, appellant brought fraudulent and negligent misrepresentation claims against all four defendants, Rako, Stonehenge, Scarpitti and Re/Max, and a breach of fiduciary duty claim against Scarpitti and Re/Max. Appellant claimed that the defendants falsely represented that lot #1495 was part of the property for sale when, in fact, only lot #1494 was for sale. Thus, appellant claimed that the defendants fraudulently or negligently misrepresented the amount of land being purchased. Appellant claimed that these misrepresentations occurred through the MLS listing, the use of the photo of the property, placement of the "For Sale" sign on lot #1495, and a representation about how well the house he wanted to build would fit on such a large lot. Appellant asserted that the appellees intentionally made this representation because any house built only on lot #1494 would necessarily be built behind another house. Appellant claimed that this representation was material to his decision to buy the lot. Further, appellant claimed that the appellees failed to disclose a shared driveway on the property. Appellant further alleged that Scarpitti, who had received a plat of the area prior to the closing on the property, should have recognized the correct area of property for sale and should have so informed appellant.
 {¶ 8} On November 24, 2003, appellees Rako and Stonehenge filed motions for summary judgment. A hearing on the motion was held before a Magistrate. On March 4, 2004, the Magistrate issued a Decision in which it was recommended that summary judgment be granted in favor of Rako and Stonehenge. This recommendation was primarily based on a finding that appellant had a duty to investigate the size of the lot for sale. Thus, essentially, the Magistrate concluded that appellant could not show that he had justifiably relied upon Rako or Stonehenge's representation.
 {¶ 9} Appellant objected to the Magistrate's Decision. By Judgment Entry filed March 29, 2004, the trial court overruled appellant's objections and granted summary judgment in favor of appellees Rako and Stonehenge. The trial court concluded that appellant had failed to establish justifiable reliance upon the alleged misrepresentations. The trial court agreed with the Magistrate's finding that appellant had a duty to investigate the size of the lot for himself and failed to do so.
 {¶ 10} On April 26, appellees Scarpitti and Re/Max filed a motion for summary judgment. By Judgment Entry filed August 2, 2004, the trial court granted summary judgment in favor of appellees Scarpitti and Re/Max. The trial court concluded that appellant could not establish the necessary element of justifiable reliance common to fraud and negligent misrepresentation. As to the breach of fiduciary duty claim, the trial court held that Scarpitti, and by extension Re/Max, knew everything that appellant knew about the lot at issue and that prior to closing, Scarpitti had no knowledge nor should have had knowledge that lots 1494 and 1495 were, in fact, two separate lots. As a result, the trial court found there could be no breach of fiduciary duty and granted summary judgment in favor of Scarpitti and Re/Max.
 {¶ 11} It is from these grants of summary judgment that appellant appeals, raising the following assignments of error:
 {¶ 12} "I. THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING APPELLEES' RAKO REALTY INC., AND STONEHENGE COMPANY'S MOTION FOR SUMMARY JUDGMENT WHERE ISSUES OF FACT REMAINED.
 {¶ 13} "II. THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING APPELLEES' JEFF SCARPITTI AND RE/MAX'S MOTION FOR SUMMARY JUDGMENT WHERE ISSUES OF FACT REMAINED."
 {¶ 14} This matter reaches us upon a grant of summary judgment. Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35, 36,506 N.E.2d 212. As such, we must refer to Civ. R. 56(C) which provides the following, in pertinent part: "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in the party's favor."
 {¶ 15} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. Further, trial courts should award summary judgment with caution. "Doubts must be resolved in favor of the non-moving party." Murphy v. Reynoldsburg,65 Ohio St.3d 356, 359, 1992-Ohio-95, 604 N.E.2d 138.
 {¶ 16} It is pursuant to this standard that we review appellant's assignments of error.
 I {¶ 17} In the first assignment of error, appellant contends that the trial court erred as a matter of law when it granted summary judgment in favor of appellees Rako and Stonehenge. Specifically, appellant argues that Rako and Stonehenge are responsible for the misrepresentation in the photo used in the MLS listing, and that issues of fact remain as to the fraudulent and negligent misrepresentation claims because, in light of all of the facts and circumstances, appellant justifiably relied upon Rako and Stonehenge's misrepresentations.
 {¶ 18} Fraud and negligent misrepresentation share the element of justifiable reliance.[3] The trial court found that there was no justifiable reliance. We agree.
 {¶ 19} The doctrine of caveat emptor applies to real estate transactions in Ohio, and limits the ability of claimants to raise allegations of fraud or misrepresentation related thereto. In general, the doctrine governs the obligation of sellers to disclose information in real estate transactions and precludes any reliance on certain misrepresentations made by a seller or seller's agent concerning the condition of that property. Parahoo v. Mancini (Apr. 14, 1998), Franklin App. No. 97APE08-1071, 1998 WL 180539. Moreover, the doctrine declares that a party has no right to rely on certain representations regarding the property to be transferred when the true facts are equally open to both parties. Traverse v. Long (1956), 165 Ohio St. 249, 252,135 N.E.2d 256. Thus, the doctrine of caveat emptor precludes recovery against a seller by a disappointed purchaser when: (1) the defect or condition is open to observation or discoverable on reasonable inspection; (2) the purchaser had unimpeded opportunity to examine the property; and (3) the seller did not engage in affirmative misrepresentation or concealment so reprehensible in nature as to constitute fraud. Id. at 252; Layman v. Binns (1988), 35 Ohio St.3d 176,179, 519 N.E.2d 642.
 {¶ 20} Applying this doctrine, courts have routinely dismissed, as a matter of law, fraud and misrepresentation claims related to land size or lot boundaries when the true size or boundaries are readily discoverable or otherwise made known to the purchasers during the transaction. This is true even though the seller or seller's agent misrepresents the actual size of the subject property. For example, in Ralston v. Grinder (1966),8 Ohio App.2d 208, 221 N.E.2d 602, the purchasers brought an action for fraud based upon false oral representations by the defendant seller and seller's agent that the property purchased contained three acres when, in fact, it contained less than 1.5 acres. Id. at 208-209. In upholding a directed verdict for the defendants, the Summit County Court of Appeals recognized that the defendants' statements related to the property size were false but nevertheless held that caveat emptor precluded plaintiff's fraud claim as a matter of law. See also Van Horn v. Peoples Banking Co.
(1990), 64 Ohio App.3d 745, 747-748, 582 N.E.2d 1099; Finomore v.Epstein (1984), 18 Ohio App.3d 88, 91, 481 N.E.2d 1193.
 {¶ 21} Accordingly, we find that summary judgment was warranted. The actual size of the lot for sale was a matter readily discoverable by appellant. Rako and Stonehenge provided appellant, through appellant's real estate agent Scarpitti of Re/Max, a plat of the area upon Scarpitti's first inquiry for appellant, before the closing on the property. The plat showed the lots and addresses of the property involved. The MLS Listing contained an accurate description of the lot for sale. Further, an accurate description of the land area was presented in the relevant documents at closing. Thus, the true identity of the lot and its size were easily discoverable. As a result, we find that appellant cannot maintain a fraud or misrepresentation action, as a matter of law, against Rako and Stonehenge.
 {¶ 22} Appellant's first assignment of error is overruled.
 II {¶ 23} In the second assignment of error, appellant contends that the trial court erred when it granted summary judgment in favor of appellees Scarpitti and Re/Max. We agree, in part.
 {¶ 24} We will first address the argument of appellees Scarpitti and Re/Max that appellant failed to state the circumstances of alleged fraud with the requisite particularity in his complaint.[4]
Under Civ. R. 9(B), a party alleging fraud must plead the circumstances constituting fraud with particularity. "The circumstances constituting fraud include the time, place, and content of the false representation; the fact misrepresented; the identification of the individual giving the false representation; and the nature of what was obtained or given as a consequence of the fraud." Advanced Production Center, Inc. v. Emco MaierCorp., Delaware App. No. 2003CAE03020, 2003-Ohio-6206, ¶ 15 (citingAluminum Line Products Co. v. Smith Roofing Co., Inc. (1996),109 Ohio App.3d 246, 259, 671 N.E.2d 1343).
 {¶ 25} The pertinent portion of appellant's complaint reads as follows:
 {¶ 26} "8. Defendants fraudulently or negligently misrepresented to Plaintiff the actual lot he was purchasing which included the area (now known as lot 1495) that Defendant Stonehenge Company did not in fact own. This misrepresentation took place through the MLS listing and placement of the for sale sign on the lot as well as representation about how well the house he wanted to build would fit on such a large lot.
 {¶ 27} "9. The Defendants intentionally made this misrepresentation because any house built only on lot 1494 would necessarily be built behind another house. This representation was material to the decision to buy the lot.
 {¶ 28} "10. Defendants also failed to disclose a shared driveway on the property. If such disclosure was made, Plaintiff would not have purchased this lot.
 {¶ 29} "11. Plaintiff justifiably relied upon the representations of the Defendants and based on the active misrepresentations could not readily discover they were false.
 {¶ 30} "12. Due to Defendants' misrepresentations, Plaintiff incurred additional building expenses related to the misrepresentation and has lost the value of the additional yard area — the value of what is now known as lot 1495."
 {¶ 31} Upon review, we find that appellant failed to plead his fraud claim with particularity. The complaint does not state the time or place of the alleged false representations nor identify the individual giving the false representation. Accordingly, summary judgment was appropriate on appellant's claim of fraudulent misrepresentation against appellees Scarpitti and Re/Max.
 {¶ 32} However, this court finds that summary judgment was not appropriate on appellant's breach of fiduciary duty claim and negligent misrepresentation claim. Appellant argues that he relied upon his realtor, Scarpitti, while acting within the course and scope of his employment with Re/Max, and the realtor provided false representations as to the size and suitability of the lot for sale. Appellant argues that based upon the increased standard of competency, required of a real estate agent, Scarpitti should have known the true dimensions of the property involved. We agree. We will first address the breach of fiduciary claim.
 {¶ 33} A real estate agent has a fiduciary duty to its clients. SeeParahoo v. Mancini (Apr. 14, 1998), Franklin App. No. 97APE08-1071, 1998 WL 180539 (citing Foust v. Valleybrook Realty Co. (1981),4 Ohio App.3d 164, 446 N.E.2d 1122). The statutory fiduciary duties owed by a real estate agent to a client are set forth in R.C. 4735.62, which provides the following, in pertinent part:
 {¶ 34} "In representing any client in an agency or subagency relationship, the licensee shall be a fiduciary of the client and shall use the licensee's best efforts to further the interest of the client including, but not limited to, doing all of the following:
 {¶ 35} "(A) Exercising reasonable skill and care in representing the client and carrying out the responsibilities of the agency relationship;
 {¶ 36} "(D) Performing all duties specified in this chapter in a manner that is loyal to the interest of the client;
 {¶ 37} "(F) Disclosing to the client any material facts of the transaction of which the licensee is aware or should be aware in the exercise of reasonable skill and care and that are not confidential information pursuant to a current or prior agency or dual agency relationship;
 {¶ 38} "(G) Advising the client to obtain expert advice related to material matters when necessary or appropriate; . . ." R.C. 4735.62.
 {¶ 39} Thus, it is axiomatic that a real estate agent "shall exercise fidelity and good faith toward his principal in all matters that fall within the sphere of his employment, and that the agent execute his commission with skill, care and diligence." Salem v. DeWitt-JenkinsRealty Co. (1952), 65 Ohio Law Abs. 1, 4, 113 N.E.2d 918, 920; see, also, R.C. 4735.62. As noted by the Ohio Supreme Court, "[l]ike other professionals, a person holding a real estate license is held to a higher standard of competency and fairness than is a lay member of the public in the marketplace." Richard T. Kiko Agency, Inc. v. Ohio Dept. ofCommerce, Div. of Real Estate (1990), 48 Ohio St.3d 74, 76, 549 N.E.2d 509.
 {¶ 40} Because of the affirmative obligations arising from the fiduciary relationship between a real estate agent and his clients, the defense of caveat emptor does not apply when a real estate agent fails to disclose to his clients facts which were known or should have been known by him that are material to the transaction. See Finomore v. Epstein
(1984), 18 Ohio App.3d 88, 90, 481 N.E.2d 1193.
 {¶ 41} We find that there is a genuine issue of material fact as to whether Scarpitti, while acting within the course and scope of his employment with Re/Max committed a breach of fiduciary duty, in particular, a duty to disclose to the appellant the size of the lot involved. It is not disputed that appellant retained Scarpitti to assist him in purchasing a lot. It is also not disputed that Scarpitti did not inform appellant of the actual size of the lot prior to sale. Even if we assume Scarpitti was never aware of the mistake as to the size of the lot until after the closing, there is sufficient evidence in the record to show that there is a question of material fact as to whether Scarpitti should have recognized the mistake. In particular, Rako and Stonehenge claim that they faxed Scarpitti a copy of the relevant plat before the closing and the MLS listing contained an accurate description of the property. As a result, there is a genuine factual dispute as to whether Scarpitti, while acting within the course and scope of his employment with Re/Max, should have been aware of the size of the lot and so informed appellant. As such, summary judgment should not have been granted as to appellant's breach of fiduciary duty claim against Scarpitti and Re/Max.
 {¶ 42} Likewise, we find that summary judgment should not have been granted on appellant's negligent misrepresentation claim. To show negligent misrepresentation, appellant need only show that false information was provided by Scarpitti and Scarpitti failed to exercise reasonable care or competence in obtaining that information.[5] Based upon the foregoing statement of evidence presented by appellant, we find a genuine issue of material fact as to whether Scarpitti, while acting within the course and scope of his employment with Re/Max, committed negligent misrepresentation.
 {¶ 43} Appellees Scarpitti and Re/Max argue that the doctrine of merger by deed bars appellant's claim for negligent misrepresentation. That doctrine has been summarized as follows: "where the delivery of a deed is provided for as an execution of a prior agreement, the prior agreement is merged into the deed when the latter is delivered, and no cause of action upon the prior agreement can then be had, but the rights of the parties must be determined by the deed so given in execution of the prior agreement, unless the elements of fraud or mistake are involved. . . ." Klapchar v. Dunbarton Properties, Ltd. (Nov. 4, 1991), Stark App. No. CA-8521, 1991 WL 249432.
 {¶ 44} The doctrine of merger by deed does not apply in this case. The doctrine merges prior agreements and representations made by parties into the deed. However, Scarpitti was not a party to the agreement that led to the execution of the deed or a party to the deed itself. Rather, Scarpitti was an agent of one of those parties. Accordingly, the doctrine of merger does not bar appellant's claim of negligent misrepresentation against Scarpitti and Re/Max.
 {¶ 45} Appellees Scarpitti and Re/Max also argue that summary judgment should have been granted because appellant failed to mitigate damages. However, appellant, in an affidavit, stated that Stonehenge refused to take the lot back. Appellant further stated that once Stonehenge refused to take the lot back, he had no choice but to proceed with the building of the house on lot #1494.[6]
 {¶ 46} Accordingly, we sustain appellant's second assignment of error, in part, and overrule it, in part.
 {¶ 47} The Judgment of the Delaware County Court of Common Pleas is affirmed as it concerns Rako and Stonehenge Company, and reversed, as to the grant of summary judgment on the claim of breach of fiduciary duty and negligent misrepresentation brought against Scarpitti and Re/Max and affirmed as to the grant of summary judgment on the claim of fraudulent misrepresentation brought against Scarpitti and Re/Max. This matter is remanded for further proceedings consistent with this opinion.
Edwards, J. Farmer, P.J. and Wise, J. concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Delaware County Court of Common Pleas is affirmed in part, as it concerns appellees Rako and Stonehenge Company, and reversed, in part, and affirmed, in part, as to appellees Scarpitti and Re/Max. This matter is remanded for further proceedings. Costs assessed 60% to appellant and 20% to appellee Scarpitti and 20% to appellee Re/Max.
[1] According to appellant, the "For Sale" sign had been placed on what was later identified as lot #1495. Lot #1495 was not for sale.
[2] Lots 1494 and 1495 are adjacent to each other and neither lot 1494 or 1495 had a home on them. Lots 1493 and 1496, located on the adjacent sides of lots 1994 and 1495, both had homes on them.
[3] The elements of fraud are as follows: (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance. Russ v. TRW, Inc. (1991), 59 Ohio St.3d 42, 49,570 N.E.2d 1076.
The elements of negligent misrepresentation are as follows: "One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." Gutter v. Dow Jones, Inc. (1986), 22 Ohio St.3d 286,490 N.E.2d 898; and Haddon View Investment Co. v. Coopers Lybrand
(1982), 70 Ohio St.2d 154, 436 N.E.2d 212.
[4] This issue was first raised in appellees' answer to appellant's complaint. We note that this issue is more properly raised in a Civ. R. 12(B)(6) motion to dismiss. However, any possible error by the raising of the issue in a summary judgment motion rather than a Civ. R. 12(B)(6) motion to dismiss was not prejudicial to appellant, since either motion, if improper, could have been converted to or considered as the other motion. Rather than focusing upon the question of which type of motion was appropriate, this court will look to the merits of the motion in rendering its decision. See Bright v. City of Columbus (Sept. 3, 1992), Franklin App. No. 92AP-289, 1992 WL 213822 (citing Peterson v. Teodosio
(1973), 34 Ohio St.2d 161, 175; Civ. R. 1(B).)
[5] See elements of negligent misrepresentation, supra, fn. 3.
[6] Appellant claims that he was forced to proceed with the building of the home due to a restrictive term in his loan. Appellant's affidavit; Appellant's Memorandum in Opposition to Motion for Summary Judgment.