[Cite as *Jackson v. Carlton House Condominium*, 2014-Ohio-403.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100220**

# BYRON JACKSON

### PLAINTIFF-APPELLANT

vs.

# CARLTON HOUSE
# CONDOMINIUM, ETC., ET AL.

### DEFENDANTS-APPELLEES

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-759981

**BEFORE:** Jones, P.J., S. Gallagher, J., and Keough, J.

**RELEASED AND JOURNALIZED:** February 6, 2014

**ATTORNEY FOR APPELLANT**

Willa M. Hemmons
24490 Fairmount Blvd.
Beachwood, Ohio 44122


**ATTORNEYS FOR APPELLEES**

Martin T. Galvin
John B. Stalzer
Reminger Co., L.P.A.
1400 Midland Building
101 West Prospect Avenue
Cleveland, Ohio 44115

LARRY A. JONES, SR., P.J.:

{¶1} This appeal is taken from two judgments issued by the trial court on July 15, 2013. One granted summary judgment in favor of defendants-appellees Carlton House Condominium Unit Owners Association ("Carlton House") and Continental Management Company ("Continental"), and the other struck the "amended complaint of Myron Jackson as necessary party intervener." We affirm.

## I. Procedural History

{¶2} In July 2011, plaintiff-appellant Byron Jackson, pro se, initiated this action against the defendants seeking damages based on several theories of recovery arising from his treatment by defendants while he was a resident at the Carlton House and the towing of a vehicle belonging to his father from the Carlton House property.

{¶3} In October 2011, Byron was granted leave until November 30, 2011, to file an amended complaint. On November 30, Byron filed a motion for extension of time to file his amended complaint; the trial court granted his motion, and allowed him until December 14, 2011, to file his amended complaint.

{¶4} On December 14, 2011, Byron filed an amended complaint. Two days later on December 16, 2011, an attorney filed a notice of appearance on Byron's behalf.

{¶5} In July 2012, the trial court ordered Byron to appear for discovery deposition at the office of defendants' counsel. Byron complied and the deposition took place in September 2012. A different attorney other than the one who filed the December 2011

notice of appearance represented Byron at the deposition; she filed a notice of appearance after the deposition.

{¶6} On September 6, 2012, the new counsel filed a "request for leave to plead as necessary party plaintiff intervener [sic]." In that motion, Byron sought to have his father, Myron Jackson, intervene as a plaintiff because Myron resided at the residence at the times relevant to the claims and was the owner of the towed vehicle.

{¶7} On September 7, 2012, the day following her appearance in the case, the new counsel filed "plaintiff Complaint of Myron Jackson as necessary party intervener." In addition to naming Myron as a plaintiff, the complaint also named additional defendants: Jack and Marge Moir, manager and president, respectively of Continental and Jeanne Laveglia, an agent of Continental. The complaint requested damages for Myron based on the same theories of recovery Byron had asserted.

{¶8} On September 10, 2012, the trial court granted Byron "leave to file a second amended complaint." On September 20, 2012, the original and new defendants answered "plaintiff Myron Jackson's complaint." On September 24, 2012, the trial court issued a judgment ruling, "as this court has granted pltf. leave to file 2nd amended complaint, pltfs. request for leave to plead as necessary party pltf. intervener is moot." Myron was deposed in October 2012.

{¶9} In April 2013, the defendants, including the new-party defendants, filed motions for summary judgment.[1] Byron and Myron opposed the defendants' motions,

_____

[1]The new-party defendants' motion was based on their contention that there was "no operative

and Carlton House and Continental filed a reply brief.

**{¶10}** On June 13, 2013, Byron's counsel filed another complaint. It was the same complaint that she had filed on September 7, 2012, with the exception that the word "Amended" was handwritten in the caption.

**{¶11}** The trial court issued two judgments on July 15, 2013. One granted the defendants' motions for summary judgment. The other provided as follows:

> This court has permitted pltf. every opportunity to prosecute his case. Pltf. filed his case 07-19-11. Pltf. filed no less than two motions requesting that he amend his complaint, both of which this court granted, and, the last of which was granted on 09-10-12 (1 year and 3 months after this case was filed) for pltf. to file his second amended complaint. Pursuant to pltfs. request this court continued the trial date twice the last trial date set for 07-29-13 (2 years and 10 days after this case was filed.) On 4-24-13, defts. timely filed their motion for summary judgment to which pltf. filed his brief in opposition on 05-21-13. Twenty-three days later on 06-13-13, after filing his brief in opposition to defts. motion for summary judgment, pltf. filed his second amended complaint which was styled as amended complaint of Myron Jackson as necessary party intervener [sic] (said filing occurring 9 months and 3 days after this court granted pltf. leave to do so.) This court finds the filing of pltfs. amended complaint of Myron Jackson as necessary party intervener [sic] [is] unreasonably late in that it will unduly delay the resolution of this case. *Moss v. Marra*, 2003-Ohio-6853 and, therefore, strikes from the pleadings of this case pltfs. amended complaint of Myron Jackson as necessary party intervener [sic].

### II. Facts

**{¶12}** Byron was the owner of a condominium unit at the Carlton House located in Shaker Heights, Ohio. He frequently traveled for work, but when he was in town, Byron resided in the unit with his father (Myron Jackson), his mother, and his sister. Byron was assigned one parking space in the garage at the condominium unit. The complex

---

pleading that [brought] them into the case."

also had a surface parking lot. Byron owned a Ford automobile and his father owned a 1992 Mercedes-Benz.

{¶13} Byron's allegations against the defendants were based on two incidents. The first occurred in July 2009, when the Mercedes was towed by a private towing company from the surface parking lot because it was deemed abandoned. Byron denied that he had been given notice that the car needed to be moved so that the parking lot could be resurfaced. According to him, the lot was paved months after the car had been towed. Byron was not able to testify as to how long the car had been on the parking lot unmoved prior to it being towed.

{¶14} According to Byron, the car was damaged by the towing company. Specifically, Byron contended that the transmission was damaged, the trunk was dented, there were scratches on the car, and the lock was "popped." The 1992 Mercedes had been purchased by Myron in 2005 for $2,600. Byron testified that after it was purchased, he and his father had it restored to "mint condition," thereby increasing its value.

{¶15} The second incident occurred in December 2009, when, at the direction of Carlton House and Continental, plumbers came to the Jacksons' unit to inspect the possibility that a pipe was leaking into a downstairs unit. According to Byron, prior to the inspection, he had been constantly harassed and intimidated by the defendants' agents to allow them to gain access to his apartment. For example, Byron testified that whenever the building custodian would see him, the custodian would "badger" him about

getting into his apartment. Further, a Shaker Heights police officer came three days prior to the plumbers coming to inform the Jacksons that the inspection would be occurring.

{¶16} Myron had arranged a time for the inspection. Byron admitted that his parents let the plumbers in, but contended that they did so under duress because of the police officer's prior visit. Byron was not at home at the time of the inspection. Byron contended that the plumbers left a "mess" for his parents to clean up. The inspection revealed that Byron's unit was not the source of the leak and, by Byron's admission, the issue was dropped after the inspection.

{¶17} Byron further testified that he missed hundreds of hours of work while prosecuting his claims in this case, costing him upwards of $100,000 in income.

{¶18} During much of defense counsel's questioning during deposition, Byron responded that he did not know, could not remember, or would not answer counsel. He failed to produce any receipts or documentation of his claimed damages. Likewise, Myron did not provide detailed testimony into the nature of his claims against the defendants or documentation of his alleged damages.

### III. Law and Analysis

{¶19} Byron assigns the following two errors for our review:

[I.] The trial court erred in not accepting plaintiff-appellant Myron Jackson's complaint filed on September 7, 2012.

[II.] The trial court erred in granting summary judgment for the appellees.

{¶20} The first assignment of error challenges the trial court's judgment striking

the "amended complaint of Myron Jackson as necessary party intervener [sic]." Upon review, we find that any error in this case was harmless. Under Civ.R. 61, harmless error means:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

{¶21} The procedural history in this case was somewhat unconventional, and we have liberally applied the Rules of Civil Procedure.

{¶22} After the first amended complaint of December 14, 2011, was filed, two additional complaints were filed: the first on September 7, 2012, and the second on June 13, 2013. The complaints were substantively the same and added Myron as a plaintiff and three agents of the original defendants as new-party defendants.

{¶23} The trial court's judgment states that it was striking the "second amended complaint" because it was filed "unreasonably late," that being 23 days after Byron had filed his opposition to the defendants' summary judgment motions, and nine months after the court had granted leave for the filing. The trial court, therefore, was clearly referencing the complaint filed on June 13, 2013. It ignored, however, the complaint that was filed on September 7, 2012.

{¶24} Leave had been granted to file a second amended complaint on September 10, 2012. Although the September 7 complaint was filed prior to leave being granted,

on this record we find that the leave related back to the filing. It is clear that Byron wanted to add his father as a party and that is what the September 7 complaint did.

{¶25} We recognize that the complaint also added three additional defendants, but we are not persuaded by the defendants' contention that the only complaint before the trial court should have been the December 2011 amended complaint, particularly because the defendants (original and new) filed an answer to the September 7 complaint and deposed Myron; they treated Myron as if he were a party to the action.

{¶26} Moreover, the record is clear that the September 7 filing, which only alleged claims on Myron's behalf and not on Byron's behalf, was not meant to replace the December 2011 amended complaint in the way a truly amended complaint would; rather, it was meant to be in tandem with the December 2011 complaint.

{¶27} Thus, on this record, we find that leave was granted to file the September 7 complaint, and the trial court should have considered it along with the December 2011 amended complaint.

{¶28} However, the record demonstrates that the claims in both the December 2011 amended complaint and the September 2012 complaint could not have survived the defendants' motions for summary judgment, as will be discussed below in addressing the second assignment of error.

{¶29} Appellate review of a summary judgment is de novo. *Hillyer v. State Farm Mut. Auto. Ins. Co.*, 131 Ohio App.3d 172, 175, 722 N.E.2d 108 (8th Dist.1999). Summary judgment is proper only when, looking at the evidence as a whole: (1) there is

no genuine issue of material fact; (2) reasonable minds can come to only one conclusion that is adverse to the party against whom the motion for summary judgment is made, and; (3) the moving party is entitled to judgment as a matter of law. Civ.R. 56(C); *Bostic v. Connor*, 37 Ohio St.3d 144, 146, 524 N.E.2d 881 (1988). All issues that are in doubt must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359, 604 N.E.2d 138 (1992).

{¶30} When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleading, but must respond with specific facts showing that there is a genuine issue of material fact. Civ.R. 56(E); *Riley v. Montgomery*, 11 Ohio St.3d 75, 79, 463 N.E.2d 1246 (1984).

{¶31} Based upon Byron and Myron's deposition testimony, Carlton House and Continental contended in their motion for summary judgment that it was clear that they were entitled to judgment as a matter of law. The motion discussed each theory of the claims for relief (Myron's September 2012 complaint set forth the same claims for relief as Byron's amended complaint had set forth).

{¶32} In opposition to the summary judgment, Byron and Myron alleged the same facts set forth in their pleadings. As exhibits to their opposition, the Jacksons attached the following: (1) the cover page of a pleading from a foreclosure action filed against them by Countrywide Home Loans, Inc., (2) the release form from the Shaker Heights Police Department, showing release of the Mercedes to Myron, and (3) the incident report from the Shaker Heights Police Department indicating that the Mercedes was abandoned

and towed.

{¶33} Upon review, the Jacksons failed to demonstrate that a genuine issue of material fact existed as to any of their claims against any of the defendants (original or new).

**Fair Debt Collection Practices Act**

{¶34} It was the Jacksons' contention that the defendants violated the Fair Debt Collection Practices Act for their role in the foreclosure proceedings against the Jacksons. However, there was no evidence presented that the defendants had anything to do with the foreclosure proceedings against the Jacksons. The trial court, therefore, properly granted the defendants summary judgment on that claim.

**Fair Housing Act**

{¶35} The Jacksons contended that the defendants engaged in discriminatory housing practices in violation of the Fair Housing Act. They presented no evidence, however, to demonstrate that the defendants' acts of having their unit inspected for a possible leak or towing the Mercedes were executed with any discriminatory motive. The trial court, therefore, properly granted summary judgment on that claim.

**Trespass**

{¶36} According to the Jacksons, Myron let the plumbers into the unit under duress. But the evidence demonstrated otherwise. Specifically, Myron made an appointment to let them in and he admitted at deposition that he did not feel under duress when the police officer came to the unit. In fact he told the officer that the plumbers

would "have no problem getting in my apartment." On this record, the Jacksons were unable to maintain a trespass claim and the trial court properly granted the defendants' summary judgment motion as to it.

**Fraud and Misrepresentation**

{¶37} Claims of fraud and misrepresentation involve a representation, concealment of fact, or supplying of false information in consummating a transaction. *See Russ v. TRW, Inc.*, 59 Ohio St.3d 42, 49, 570 N.E.2d 1076 (1991); *Gutter v. Dow Jones, Inc.*, 22 Ohio St.3d 286, 490 N.E.2d 898 (1986). No transaction occurred in this case between the Jacksons and the defendants and thus the trial court properly granted the defendants' summary judgment motion as to these claims.

**Unfair or Deceptive Trade Practices**

{¶38} A claim for unfair or deceptive trade practice usually involves trademark disputes or unfair competition. R.C. 4164.02 governs deceptive trade practices and lists numerous ways one can engage in such a practice. Upon review, there is no set of facts in this case that would have allowed the Jacksons to recover under a claim of unfair or deceptive trade practices. Accordingly, the trial court properly granted the defendants' motion for summary judgment as to the claim.

**Conspiracy**

{¶39} Civil conspiracy has been defined as a "malicious combination of two or more persons to injure another, in person or property, in a way not competent for one

alone." *Minarik v. Nagy*, 8 Ohio App.2d 194, 196, 193 N.E.2d 280 (8th Dist.1963). Thus, the elements that comprise a claim of civil conspiracy are (1) a malicious combination; (2) two or more persons; (3) injury to person or property; and (4) existence of an unlawful act independent from the actual conspiracy. *Laughner v. Laughner*, 8th Dist. Cuyahoga No. 56491, 1990 Ohio App. LEXIS 151 (Jan. 25, 1990).

**{¶40}** The plaintiffs failed to present evidence that two or more of the defendants maliciously combined to do an unlawful act against the Jacksons that caused injury to them or their property. Accordingly, the trial court properly granted summary judgment as to that claim.

**Fraudulent or False Police Report**

**{¶41}** The Jacksons claim that the defendants made a false claim to the Shaker Heights police that the Mercedes was abandoned and had expired license plates.

**{¶42}** R.C. 2917.32 governs the misdemeanor crime of making false alarms, and provides that no person shall "[r]eport to any law enforcement agency an alleged offense or other incident within its concern, knowing that such offense did not occur." Criminal actions are prosecuted by the government, not private citizens. Thus, the trial court properly granted the defendants summary judgment as to this claim.

**{¶43}** In sum, the Jacksons presented no evidence demonstrating that there were material issues of fact to be litigated. Their opposition to the defendants' motion for summary judgment merely reiterated their conclusory allegations in the complaints and was wholly unsupported by any relevant evidence.

**{¶44}** In light of the above, the Jacksons' two assignments of error are overruled.

**{¶45}** The trial court's judgments are affirmed.

It is ordered that appellees recover of appellant their costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

LARRY A. JONES, SR., PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
KATHLEEN ANN KEOUGH, J., CONCUR